## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

STACY CREASY and TIFFANY HOGANS, on behalf of themselves and others similarly situated,

          Plaintiff,

   v.

CHARTER COMMUNICATIONS, INC., dba SPECTRUM,

          Defendant.

Civil Action No. 2:20-cv-1199-F-4

Judge: Martin L.C. Feldman

Magistrate Judge: Karen Wells Roby

## CHARTER COMMUNICATIONS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    RELEVANT FACTS ................................................................................. 3

III.   ARGUMENT ............................................................................................ 4

    A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims. .................. 4

        1.     Motion to Dismiss Standard under F.R.C.P. 12(b)(1). .....................................4

        2.     The Supreme Court's Holding in *AAPC*. ..........................................................5

        3.     *AAPC* Deprives the Court of Subject Matter Jurisdiction Because the Violation of an Unconstitutional Law Is Not a Justiciable Question.................7

        4.     The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result.................................................................................9

        5.     The Supreme Court's Recent Opinion in *Seila Law* Supports Dismissal........12

        6.     Plaintiffs' Allegation of a Single Post-*AAPC* Text Message Does not Change This Analysis. .....................................................................................14

    B.     If the Court Finds Subject Matter Jurisdiction Exists, Hogans's Claim Should Still be Dismissed Based on Lack of Personal Jurisdiction Because it Does not Arise from Charter's Contacts with Louisiana.................................. 16

IV.    CONCLUSION ...................................................................................... 20

## I.    INTRODUCTION

In this Telephone Consumer Protection Act ("TCPA") class action, Charter Communications, Inc. ("Charter") moves to dismiss Plaintiffs Stacy Creasy and Tiffanie Hogans' ("Plaintiffs") First Amended Complaint ("FAC") because the Court lacks subject matter jurisdiction over the entire action. Should the Court find that subject matter jurisdiction exists, then the Court should dismiss Hogans's claim for lack of personal jurisdiction.[1]

As to subject matter jurisdiction, "[a]n act of congress repugnant to the constitution cannot become a law." *Marbury v. Madison*, 5 U.S. 137, 138 (1803). Plaintiffs ask the Court to cast aside this bedrock constitutional principle in seeking damages against Charter for allegedly violating the TCPA's "automated-call ban"—a provision the Supreme Court just held was unconstitutional in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter, "*AAPC*").[2] Specifically, the Supreme Court held that the TCPA's automated-call ban, upon which Plaintiffs' case is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception—a carveout that allowed only government debt collectors to violate the restriction. In other words, the automated-call ban has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC*. This inescapable conclusion, that Plaintiffs are suing based on violations of an unconstitutional statute, is fatal to this entire action.

---

[1]    Because this motion seeks dismissal on the basis of subject matter jurisdiction, the Court should refrain from setting a scheduling conference (and thus opening discovery) until it decides the threshold jurisdictional argument raised herein. *See Sangha v. Navig8 ShipManagement Private Ltd*, 882 F.3d 96, 100 (5th Cir. 2018) ("federal courts normally must resolve questions of subject-matter jurisdiction before reaching other threshold issues").

[2]    Because the Supreme Court decided the constitutional challenge to the automated-call ban in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply to the instant filing and a notice of constitutional challenge is not required. *See* Fed. R. Civ. P. 5.1. If the Court determines otherwise, Charter will promptly file such a notice.

It is true that the Supreme Court took the additional step in *AAPC* of preserving the TCPA as a whole by severing the government debt exception. But the fact that the Supreme Court cured the constitutional infirmity by severing the carve-out such that the automated-call ban can now be enforced *prospectively* does not change the impact of the ruling in this case: that Charter, consistent with over two hundred years of constitutional jurisprudence, could not have violated a statutory provision that was unconstitutional at the time of the alleged violation.

An example illustrates this point. If, instead of government debt collectors, Congress passed a carve-out for the Joe Biden campaign that was later held to be unconstitutional, the disfavored speakers (any other speaker, including an opposing campaign) could not then be punished for making calls during the period of time for which the Biden campaign was given a free pass. That is to say, the disfavored speakers could not be punished for violating a flagrantly unconstitutional and discriminatory speech restriction. The same exact result follows here: Charter cannot be penalized for making any calls (much less *debt collection* calls, which Plaintiff alleges here) that allegedly violated the automated-call ban during the period of time that favored speakers—government debt collectors making the same type of calls—were given a free pass.

Plaintiffs do allege a single text message that occurred after the *AAPC* decision "fixed" the statute by severing the government debt exception. But it is undisputed that this single text message was not sent by Charter. Thus, it does not alter the conclusion that the entire action must be dismissed for want of subject matter jurisdiction. And to the extent that subject matter jurisdiction exists with regard to the single post-*AAPC* text message (it does not), *AAPC* would still require dismissal of Plaintiff Hogans's entire claim and the entire putative call class, neither of which are based on any conduct post-*AAPC*.

If the Court somehow determines that subject matter jurisdiction exists, the Court should still dismiss Plaintiff Hogans's claim because Hogans cannot establish either general or specific jurisdiction over Charter: Charter is not at home in Louisiana and Hogans's claim does not arise from Charter's contacts with Louisiana.  In fact, Hogans alleges that she is a North Carolina resident who received messages intended for a North Carolina number from a North Carolina number—none of which has anything to do with Louisiana.

## II.    RELEVANT FACTS

On April 15, 2020, Creasy filed this putative class action, alleging that Charter called her cellular phone using an ATDS and pre-recorded voice messages without her consent from November of 2019 through January of 2020.  Dkt. 1, ¶ 1.[3]  On July 27, 2020, Charter moved to dismiss the complaint based on lack of subject matter jurisdiction and brought a second motion arguing that, in the alternative to dismissal, the Court should stay the case pending a decision by the Supreme Court in *Facebook Inc. v. Duguid*, No. 19-511.  *Id*., 22-23.  Following these motions, Plaintiffs filed the FAC on July 31, 2020.  *Id*., 24.  Charter then filed a notice of withdrawal of the motions on August 8, 2020, and the Court thereafter entered an order denying the motions as moot but stating that they may be re-urged in response to the FAC.  *Id*., 28-29.

The FAC adds a new plaintiff, Hogans.  *Id*., 24, ¶ 1.  Plaintiffs allege that they received

---

[3]    Though beyond the scope of this Motion, Plaintiffs' case is fatally flawed both on the merits and at class certification.  As to the merits, and just by way of an example, Charter made no calls with an automatic telephone dialing system ("ATDS") and had the consent of its customers who provided the numbers at issue to make any calls.  And with regard to class certification, two separate courts recently denied class certification in similar "wrong number" cases against Charter's affiliates.  *See Sliwa v. Bright House Networks*, 333 F.R.D. 255, 262 (M.D. Fla. 2019); *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063, at * 1 (S.D.N.Y. Aug. 14, 2019).  But the parties need not spend years litigating those issues, and the Court need not spend years policing and deciding them.  That is because this case ends for a simple, threshold reason:  the sole statutory provision under which Plaintiffs sue was unconstitutional during the time the calls at issue occurred, thus depriving the Court of subject matter jurisdiction over the claims.

a series of calls and text messages that were intended for another Charter customer, including payment reminders. *Id*., ¶¶ 10-61 and Exs. A-B. Plaintiffs allege only one communication that took place after July 6, 2020, which is a text message to Creasy "identifying the sender as Spectrum Mobile—on July 11, 2020." *Id*., ¶ 40. Based on these purported communications, Plaintiffs assert one claim for violations of the TCPA's automated-call ban provision, 47 U.S.C. § 227(b)(1)(A)(iii). *Id*., ¶¶ 113-117. This provision makes it unlawful for any person to place calls to a cellular phone without consent using an artificial/prerecorded voice or an "automatic telephone dialing system" (or "ATDS"). *Id*.; 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiffs also asks the Court to certify two nationwide TCPA classes for violations of the automated-call ban, one based on purportedly autodialed or pre-recorded voice calls ("Call Class") and the other on allegedly autodialed text messages ("Text Message Class"). *Id*., ¶ 83.

Relevant to whether the Court has personal jurisdiction with regard to Hogans, the new plaintiff, she is a North Carolina resident who allegedly received calls and texts directed to a *North Carolina* number (910 area code) from a *North Carolina* number (704 area code) or a toll free number with no geographic designation. *Id*., ¶¶ 7, 43-61. Additionally relevant, Charter does not have significant employees, corporate offices, or real estate in Louisiana. Flores Decl., ¶¶ 7-18.

Charter now moves to dismiss both Plaintiffs' claims for lack of subject matter jurisdiction or, alternatively, Hogans's claim for lack of personal jurisdiction.

## III. ARGUMENT

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims.

#### 1. Motion to Dismiss Standard under F.R.C.P. 12(b)(1).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks

the statutory or constitutional power to adjudicate the case." *Wright v. Spindletop Films, L.L.C.*, 830 F. Supp.2d 280, 283 (S.D. Tex. 2011) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (citing *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). The Supreme Court has long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").

"Standing is also a component of subject matter jurisdiction." *HSBC Bank USA, N.A., as Trustee for Merrill Lynch Mort. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). With regard to Article III standing, a plaintiff bears the burden to establish: "'(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury.'" *See, e.g.*, *McLemore v. Hosemann*, 414 F. Supp. 3d 876, 882 (S.D. Miss. 2019) (quoting *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## 2. The Supreme Court's Holding in *AAPC*.

In January, the Supreme Court granted *certiorari* in *AAPC*, framing the issues as "[1] [w]hether the government-debt exception to the TCPA's automated-call restriction violates the

First Amendment, and [2] whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Question Presented Report, *AAPC*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00631qp.pdf (last visited August 11, 2020). The Supreme Court did not grant certiorari to consider whether the statute was enforceable pre-severance; nor did the parties ever brief that issue. *Id*. Indeed, since *AAPC* was a direct challenge to the automated-call ban, there was no underlying litigation and, thus, no occasion for the Supreme Court to decide the impact of the decision on pending TCPA cases like this one. *See id*.

On July 6, 2020, the Supreme Court decided *AAPC*. The Court's Opinion was a deeply fractured plurality, but a majority of Justices still agreed that the automated-call ban, upon which Plaintiffs' case is entirely based, was an unconstitutional content-based restriction when combined with the government debt exception. *AAPC*, 140 S. Ct. 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Specifically, the automated-call ban combined with the government debt exception "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *See id* at 2344. Because the restriction was content based, it was subject to strict scrutiny, which it failed to pass.[4] *Id*. Six justices agreed with this conclusion. *Id*. Rather than scrapping the entire statute, however, the Supreme Court opted to save the TCPA by severing the government debt exception, though only three Justices (Kavanaugh, Roberts, and Alito) joined in the plurality's rationale for doing so. *Id*. at 2352–54.

---

[4]   Notably, strict scrutiny is the same standard the Supreme Court would apply to viewpoint discrimination, meaning the analysis and result in *AAPC* would have been the same if the exception had favored a particular political party, race, or ethnic group. *See AAPC*, 140 S. Ct. at 2347 ("[T]he robocall restriction with the government-debt exception is content-based. Under the Court's precedents, a law that is content based is subject to strict scrutiny." (internal quotations omitted)).

### 3. *AAPC* Deprives the Court of Subject Matter Jurisdiction Because the Violation of an Unconstitutional Law Is Not a Justiciable Question.

"'[A]n unconstitutional law is void, and is as no law.'" *Montgomery*, 136 S. Ct. at 731 (quoting *Siebold*, 100 U.S. at 376). A violation of such a law is "not merely erroneous, but is illegal and void, and . . . [bestows upon] the Circuit Court . . . no jurisdiction of the causes." *Siebold*, 100 U.S. at 376-377; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-760 (1995) ("A court does not—in the nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'") (emphasis in original and citing *Marbury*, 5 U.S. at 178) (Scalia, J. concurring); *McClure v. Middletown Hosp. Ass'n*, 603 F. Supp. 1365, 1368 (S.D. Ohio 1985) ("We accept the proposition that unconstitutional statutes are generally void *ab initio*[.]").

Here, Plaintiffs' action, with one exception discussed *infra*, is based on alleged violations of the automated-call ban prior to July 6, 2020, at a time during which the Supreme Court in *AAPC* determined this ban was unconstitutional (and prior to the Supreme Court's "cure" of the constitutional infirmity through severance of the government debt exception). Accordingly, because Charter could not have violated an unconstitutional statute and this Court cannot provide a remedy for a violation of an unconstitutional statute, there is no justiciable federal question, compelling dismissal.

The necessity of this result is illustrated by numerous cases. Indeed, imposing liability for speech that allegedly violates an unconstitutional statute is irreconcilable with Supreme Court precedent and fundamental due-process and equal protection principles. In *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972), the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted." In other words, the relevant

inquiry is whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action. Thus, in this case, the automated-call ban must be assessed at the time Charter allegedly committed the violations, which was prior to July 6, 2020, at a time the ban illegally favored certain speakers. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"); *United States v. Stroke*, No. 1:14-CR-45S, 2017 WL 2643666, at *2 (W.D.N.Y. June 20, 2017) ("probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident").

Similarly, in *Montgomery*, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life without parole in 1963. *See* 136 S. Ct. at 723. The Supreme Court concluded the answer is yes: a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees." *Id*. at 730 (citing *U.S. v. U.S. Coin and Currency*, 401 U.S. 715, 724 (1971) ("'No circumstances call more for the invocation of a rule of complete retroactivity' than when "'the conduct being penalized is constitutionally immune from punishment.'")); *see also Waldron v. United States*, 146 F.2d 145, 147-148 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining "inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

These decisions unanimously recognize the fundamental unfairness of imposing penalties for violations of a statute that was concededly unconstitutional—and thus "void"—when the alleged violations occurred.  They also make obvious, intuitive sense.  If the rule were otherwise, the political party in power could pass similar unconstitutional exceptions to favor its own preferred speech, knowing it could only be penalized on a prospective basis once a challenge reached the Supreme Court.  To put this example in starker terms, if a Democratic Congress added an exception to the TCPA permitting Democratic campaigns to make calls that were prohibited for everyone else and the Supreme Court severed that exception, litigants could not (and would not) legitimately argue that a Republican Political Action Committee could be penalized for violating the pre-severance statute but that a Democrat's campaign could only be penalized post-severance.  This would be an untenable result—and it is not the law.  *See Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").  It follows here that Charter cannot be penalized in ongoing litigation for making calls pre-severance, in violation of an unconstitutional provision, when the government debt collectors were excused.  Indeed, such a result would vitiate the majority holding of *AAPC* (that the automated call ban combined with the government debt exception is unconstitutional).

4.  **The Three-Justice Dicta in Footnote 12 of the *AAPC* Decision Does Not Warrant a Different Result.**

Speaking for a three-Justice plurality, Justice Kavanaugh states in footnote 12:

As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate.  [citation omitted].  *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*AAPC*, 140 S. Ct. at 2355, n.12 (emphasis added). Though the footnote is admittedly vague, it does not change the conclusion that the Court lacks subject matter jurisdiction over the Plaintiffs' claims.

This is true for several reasons. *First*, the footnote consists of pure obiter dicta,[5] which should be afforded little weight, particularly because it was only the opinion of three justices. Thus, it was correctly characterized by Justices Thomas and Gorsuch (both of whom criticized this dicta) as only a non-binding "suggestion." *See id*. at 2363. For that reason, it does not change the binding effect of the *holding* of the case, adopted by a *majority* of Justices: that the automated-call ban combined with the government-debt exception was unconstitutional pre-severance (*i.e.*, going back to 2015 when the debt exception was enacted). *See id*. at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment.").[6] And the result of *AAPC*'s binding holding is, as explained above, that the automated-call ban cannot be enforced against Charter in this case, based on over 200 years of prior Supreme Court precedent. *See supra* III.A.

*Second*, though the footnote is admittedly ambiguous, based on the circumstances, statements in the footnote itself, and prior Supreme Court precedent, it is most reasonably interpreted as referring to only past *judgments*. In other words, the plurality did not mean *AAPC*

---

[5]    *Black's Law Dictionary* defines obiter ("something said in passing") dictum as a "comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not *precedential* (though it may be considered persuasive). 879 (7th ed. 2000) (emphasis added). Chief Justice Marshall characterized it in *Cohens v. Virginia*, 19 U.S. 264, 399, 5 L. Ed. 257 (1821) as dicta that "may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."

[6]    Put another way, the holding of the case is binding precedent and the footnote is not. *See AAPC*, 140 S. Ct. at 2366 (shielding "only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination [the Supreme Court says it is] seeking to eliminate") (Gorsuch, J concurring).

to negate or undo liability against parties that has already been *adjudicated*.[7]  This is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand."  *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974).  This is also the only way to read the footnote consistent with *Seila Law*, in which the same three Justices who joined the plurality in *AAPC*—and just one week before the *AAPC* decision—cast doubt on the viability of actions taken by the Consumer Financial Protection Bureau (the "CFPB") during the time its leadership structure was unconstitutional.  *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020), discussed in detail *infra*, in Section III.A.5.

In short, coupled with the Supreme Court's long-standing precedent, its recent decision in *Seila Law*, and the fact the parties did not even brief the issue, the last sentence of the plurality's footnote 12 cannot reasonably be interpreted to allow courts in ongoing cases to penalize defendants under a statute that was unconstitutional at the time of the alleged conduct.  The Supreme Court is "a court of review, not of first view," and it "ordinarily will not decide questions not raised or litigated in the lower courts," certainly not in one sentence without any analysis, and certainly not when doing so would require overruling prior precedent.  *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017) (internal quotations omitted); *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 259 (1987).

---

[7]     *Black's Law Dictionary* defines liability as the "quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . ." 739 (7th ed. 2000).  Thus, liability implies a preexisting determination (*e.g.*, from a court of law) to hold a party responsible.

**5. The Supreme Court's Recent Opinion in *Seila Law* Supports Dismissal.**

As noted above, the Supreme Court decided *Seila Law* a week before *AAPC*, and *Seila Law* strongly supports the conclusion that the automated-call ban cannot be enforced against Charter in this case. 140 S. Ct. at 2208-09. In *Seila Law*, a three-justice plurality comprised of Justices Roberts, Alito, and Kavanaugh (the same plurality as the severance portion of the *AAPC* decision) recognized the long-standing principle that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance. *See id*. A majority of the Justices further concluded that the CFPB's leadership structure, consisting of a single director removable only for cause, was unconstitutional because it violates the separation of powers. *Id*. at 2204. To cure this constitutional infirmity, the three-justice plurality (Roberts, Alito, and Kavanaugh), in Part IV of the opinion, opted to sever the director's removal protection from the President. *Id*. at 2207-08.

In so holding, this plurality acknowledged that actions taken under the CFPB's constitutionally infirm leadership structure (such as investigations, litigation, and even promulgation of regulations) may require dismissal/invalidation—*unless* subsequent ratification has occurred. *See id*. at 2208 ("The parties dispute whether this alleged ratification in fact occurred and whether, if so, it is legally sufficient to cure the constitutional defect in the original demand . . . . A remand for the lower Courts to consider those questions in the first instance is therefore the appropriate course[.]"). Thus, the Supreme Court remanded to the lower court to determine "the lingering ratification issue." *Id*. In further evidence of the seriousness of the problem created by the Court's holding that the CFPB's leadership structure was unconstitutional for a period of time, the CFPB thereafter took action (the day after the *Seila Law* decision) to formally ratify actions taken from January 4, 2012, through June 30, 2020 in order to ensure they are not attacked on grounds of being void. *See CFPB Ratifies Prior Regulatory Actions*, CFPB, https://www.

consumerfinance.gov/about-us/newsroom/cfpb-ratifies-prior-regulatory-actions/ (last visited Aug. 11, 2020).

If the constitutionality of the statute posed no problems to the viability of acts taken by the CFPB while its structure was unconstitutional, then there would have been no need for the lower courts to determine the extent to which ratification occurred and no need for the CFPB to ratify its own prior acts. Put another way, by remanding the ratification issue to the lower court, the Supreme Court (including the **same** three justices who severed the debt exemption in *AAPC*) recognized that, absent ratification, the acts taken by the CFPB may be deemed void unless they were ratified on a *prospective* basis.

The logic underlying the Supreme Court's application of the severance doctrine in *Seila Law* applies with equal force to the automated-call ban. Put differently, the Supreme Court's severance of the government debt exception cured the ban's infirmity on a prospective basis. But it did not (and could not) cure the infirmity with respect to calls made during the time the law was unconstitutional—at the time it impermissibly favored one group of speakers over another.

Further, the constitutional defect in *AAPC* was far more severe than in *Seila Law*, where the defect was procedural, thereby allowing the new CFPB leadership to ratify prior acts committed by the CFPB's then-unconstitutional leadership with no harm to the affected parties. In contrast, the nature of the constitutional defect in the TCPA was *substantive*, favoring one group of speakers over another with the disfavored speakers potentially on the hook for ruinous liability—hundreds of billions of dollars in statutory penalties that are akin to criminal penalties[8]— while the favored speakers were *entirely absolved*. Unlike the procedural defect in *Seila Law*, this

---

[8]    *See, e.g.*, *McMillion, et al. v. Rash Curtis & Assoc.*, No. 4:16-CV-03396-YGR (N.D. Cal. May 4, 2020) (judgment awarding class damages for TCPA violations in amount of $267,349,000).

substantive defect cannot be cured through ratification.  Accordingly, consistent with the Court's logic in *Seila Law*, the Court cannot impose liability against Charter for violating the automated-call ban during the time it was constitutionally infirm.  *See also Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 n. 2 (Mem) (D.C. Cir. 2020) (denial of petition for en banc review) ("judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively") (O'Malley, J concurring).

### 6. Plaintiffs' Allegation of a Single Post-*AAPC* Text Message Does not Change This Analysis.

Plaintiffs may argue that the FAC should not be entirely dismissed because they allege one text message to Plaintiff Creasy was sent on July 11, 2020, after the Supreme Court severed the government debt exception, thus "fixing" the automated call ban prospectively.  *See* Dkt. 24, ¶ 40. Any such argument would be incorrect because it is undisputed that Charter did not send that text message—it was sent by Spectrum Mobile, LLC, a legally distinct entity from Charter.  *See id.*; Flores Decl., ¶¶ 5-6, 23.  In fact, Plaintiffs acknowledge in the FAC that the text message came from Spectrum Mobile.  Dkt. 24, ¶ 40.  And Plaintiffs do not (and cannot) allege that Charter and Spectrum are the same entity; rather, Plaintiffs merely state that Charter "offers its services to consumers and business under the Spectrum brand."  *See id.*, ¶ 9.  Put another way, not only did Plaintiffs sue the wrong defendant (Charter) for purposes of the single post-*AAPC* text message, they fail to allege any facts as a matter of pleading to plausibly establish that they sued the correct defendant (Spectrum Mobile), or why Spectrum Mobile should be treated indistinguishably from Charter (it shouldn't).

Accordingly, Plaintiffs' allegations regarding the single post-*AAPC* text message are insufficient to state a claim as to Charter and, even if they were, they are insufficient to confer Article III standing because the conduct complained of (sending a text message) is not fairly

traceable to Charter, the only named defendant. *See In re Enron Corp. Securities, Derivative & "ERISA" Lit.*, 238 F. Supp. 3d 799, 839 (S.D. Tex. 2017) (holding on a 12(b)(6) motion that "conclusory statement that three entities are one is not sufficient without specific facts supporting such an allegation"); *McLemore*, 414 F. Supp. 3d at 883 (holding that to establish Article III standing, "a plaintiff must generally demonstrate that his or her injury is 'fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Intern, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

In short, if Plaintiffs intend to pursue relief for the single post-*AAPC* text message, they would need to sue the sender of the message—Spectrum Mobile—not Charter, and they would need to limit their proposed class to text messages sent after July 6, 2020, when the Supreme Court decided *AAPC*. *See K.P. v. LeBlanc*, 729 F.3d 427, 435 (5th Cir. 2013) (injury sufficient for Article III standing must be "fairly traceable to the defendant's challenged behavior"); *Cochran-May v. Wells Fargo Bank, NA*, No. 2:12-CV-240, 2014 WL 361177, at *1-3 (S.D. Tex. Feb. 3, 2014) (granting 12(b)(1) motion to dismiss because conduct was not fairly traceable to defendant parent company); *Roberts v. Wells Fargo Bank, N.A.*, No. 4:12–cv–200, 2013 WL 1233268 (N.D. Ga. Mar. 27, 2013) (same) ("Unless a reason to pierce the corporate veil exists, a 'parent corporation ... is not liable for the acts of its subsidiaries[.]'" (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998))).

On this same point, to the extent the Court somehow finds that subject matter jurisdiction exists as to Plaintiffs' claim against Charter with respect to the single post-*AAPC* text message, then the Court should still dismiss all claims arising from communications on or before July 6, 2020 (the date *AAPC* was decided). This would, in effect, necessitate dismissal of both Hogans's

claim and the entire Call Class. With regard to Hogans, this is true because she does not allege receiving any communications post-*AAPC*. *See* Dkt. 24, ¶¶ 43-61. As to the Call Class, this class consists of autodialed and prerecorded/artificial voice calls. But the single communication post-*AAPC* is a text message; thus, *AAPC* extinguishes the entire Call class. *See id.*, ¶ 83. Accordingly, to the extent subject matter jurisdiction exists as to the single post-*AAPC* text message, all that would remain in this case is one named Plaintiff (Creasy) and one text message class involving texts sent after July 6, 2020.[9]

**B.** **If the Court Finds Subject Matter Jurisdiction Exists, Hogans's Claim Should Still be Dismissed Based on Lack of Personal Jurisdiction Because it Does not Arise from Charter's Contacts with Louisiana.**

If the Court determines that subject matter jurisdiction exists, the Court should still dismiss Hogans's claim for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs concede that Charter is a non-resident defendant. *See id.*, ¶ 8 (alleging Charter is "headquartered in Stamford, Connecticut"). According to Hogans, she is a *North Carolina* resident who allegedly received calls and texts <u>directed to</u> a *North Carolina* number (910 area code) <u>from</u> a *North Carolina* number (704 area code) or a toll-free number with no geographic designation. *Id.*, ¶¶ 7, 43-61. Because there is no connection between Hogans's claim and Louisiana, it appears she intends to rely on allegations that are specific to Creasy. Indeed, the FAC's sole jurisdictional allegation is that Charter allegedly directed calls/texts to *Creasy* that *Creasy* received in Louisiana, but omits any mention of Hogans. *Id.*, ¶ 5.

Binding Supreme Court authority precludes such reliance, however, and requires that Hogans establish personal jurisdiction in her own right. *Bristol-Myers Squibb Co. v. Superior*

---

[9] If the only remaining class is based on text messages, the case should be stayed pending the Supreme Court's decision in *Facebook v. Duguid* because the case will no longer involve pre-recorded messages and will hinge entirely on the interpretation of ATDS. *See* concurrently-filed motion to stay.

*Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California does not allow the State to assert specific jurisdiction over the nonresidents' claims."); *see also Chernus v. Logitech, Inc.*, No. CV 17-673-FLW, 2018 WL 1981481, at *6 (D.N.J. Apr. 27, 2018) (holding that "[c]ontrary to Plaintiffs' position, the mere fact that the New Jersey class members, including Plaintiff Shapiro, allegedly sustained the same injuries as did Chernus—a nonresident of New Jersey—alone does not confer this Court with specific jurisdiction over Chernus' claims[, such that] the Court lacks specific jurisdiction in this regard"); *Horowitz v. AT&T Inc.*, No. 3:17-CV-4827-BRM-LHG, 2018 WL 1942525, at *15 (D.N.J. Apr. 25, 2018) (explaining there must be a connection between the claims of putative class action representatives and the defendant's activities within the forum state, even if they are "similar or identical to claims brought by the resident named plaintiffs"); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 850-51 (N.D. Ohio 2018) (granting motion to dismiss for lack of personal jurisdiction as to non-Ohio plaintiffs with no Ohio connection against Texas defendant); *cf. Richmond v. Nat'l Gypsum Servs. Co.*, No. CV 18-7453, 2018 WL 5016221, at *3–4 (E.D. La. Oct. 16, 2018) (recognizing, under *Bristol-Myers*, claims of "*named* plaintiff" in putative class action are relevant to personal jurisdiction) (emphasis in original).

Stated another way, as the party "seeking to invoke the jurisdiction of this Court[, Hogans] bears the burden of establishing it." *Hebert v. Wing Sale, Inc.*, 337 F. Supp. 3d 714, 717 (E.D. La. 2018) (Feldman, J.). To satisfy that burden, Hogans must establish that the exercise of jurisdiction will not offend due process, because Louisiana's long-arm statute is coextensive with the Fourteenth Amendment. *Id.* at 717-18. Hogans cannot do so as to either category of jurisdiction— general or specific—including because "it is essential in each case there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws," ensuring a defendant will not be haled into a jurisdiction based on the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

"The general jurisdiction inquiry is 'dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum.'" *Sciortino v. CMG Capital Mgmt. Grp., Inc.*, No. CV 16-11012, 2016 WL 4799099, at *3 (E.D. La. Sept. 14, 2016) (Feldman, J.) (quoting *Dickson Marine, Inc. v. Panalina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999)). Charter is a Delaware corporation with its principal place of business in Stamford, Connecticut, Flores Decl., ¶ 7, meaning Hogans must show Charter "is fairly regarded as at home" in Louisiana to show that general jurisdiction is proper. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *accord Sciortino*, 2016 WL 4799099, at *3 (citing *Goodyear* for "at home" standard and recognizing court may consider affidavits in ruling on personal jurisdiction motion). Hogans does not attempt to—and cannot—satisfy this heavy burden because Charter does not have significant employees, corporate offices, or real estate in Louisiana. Flores Decl., ¶¶ 7-18. These facts, standing alone, require dismissal of Hogan's FAC under a general jurisdiction analysis. *Goodyear*, 564 U.S. at 924; *Sciortino*, 2016 WL 4799099, at *3-4.

Hogans's claim also must be dismissed under the dispute-focused specific jurisdiction analysis. "Specific jurisdiction exists when a suit arises out of or relates to the defendant's contacts with the forum state." *Hebert*, 337 F. Supp. 3d at 718. Applied here in view of *Bristol-Myers* and *Burger King*, this standard requires Hogans to show *her claim* arises out of or relates to calls or texts that Charter purposefully directed to her in Louisiana. *See Hebert*, 337 F. Supp. 3d at 718 (holding plaintiff, to establish *prima facie* case of personal jurisdiction, must show that plaintiff's "cause of action arises out of or results from the defendant's forum-related contacts"); *Healthcare*

*Proprietors Agency, Inc. v. Tax Credit Processing Ctr., LLC*, No. CIV.A. 11-2511, 2011 WL 6101017, at *2 (E.D. La. Dec. 7, 2011) (Feldman, J.) ("Specific jurisdiction, which is the only issue here, exists if the plaintiff shows that the defendants have purposely directed their activities toward the forum state and that its cause of action arises out of or results from the defendants' forum-related contacts.").

Hogans not only fails to allege that Charter purposefully directed calls or texts to her in Louisiana, but actually alleges the opposite: that Charter allegedly called and texted her in North Carolina using her North Carolina number, (910) XXX-5093 ("Hogans's Number"). *See* Dkt 24, FAC, ¶ 7 (alleging Hogans is North Carolina resident), ¶¶ 43-45 (alleging Hogans received calls and texts at her 910 area code number); Flores Decl., ¶ 21 (averring 910 is a North Carolina area code).

Likewise, Charter's jurisdictional evidence confirms the alleged calls and texts have no connection to Louisiana. Hogans's Number was provided to the Spectrum Entities by a Spectrum customer with service in North Carolina. Flores Decl., ¶ 24-25 & Ex. A. Given the 910 area code and North Carolina service location associated with Hogans's Number, to the extent the Spectrum Entities called or texted it, they did so with the intent of communicating with their customer in North Carolina. *Id.*, ¶ 24.

In view of Plaintiffs' factual allegations and Charter's unrefuted evidence, Hogans has not and cannot establish a *prima facie* case of jurisdiction. Accordingly, even if the Court had subject matter jurisdiction after the Supreme Court's decision in *AAPC*, her claim should be dismissed for lack of personal jurisdiction. *See Healthcare Proprietors Agency*, 2011 WL 6101017, at *2 ("Given the limited contacts that [defendant] had with Louisiana, and because the plaintiffs have failed to articulate the connection between those contacts and their causes of action, this Court

finds that personal jurisdiction is lacking."); *see also Sciortino*, 2016 WL 4799099, at *3-7 (dismissing complaint where plaintiff failed to establish general or specific jurisdiction); *Hebert*, 337 F. Supp. 3d at 717-722 (granting motion to dismiss where general jurisdiction was not at issue and plaintiff failed to establish specific jurisdiction); *accord Guidry v. Janssen Pharm., Inc.*, 206 F. Supp. 3d 1187, 1193-1196 (E.D. La. 2016) (Feldman, J.).

## IV.    CONCLUSION

*AAPC* held that the TCPA's automated-call ban was an unconstitutional content-based restriction when combined with the government debt exception that was enacted in 2015 and in place until the Supreme Court severed it on July 6, 2020.  140 S. Ct. at 2346.  The violations of the automated-call ban asserted by Plaintiffs against Charter all occurred during the time the ban was unconstitutional.  Thus, the Court should dismiss the action because it lacks jurisdiction to enforce a void law against Charter.  *See Marbury*, 5 U.S. at 180.  If the Court finds that subject matter jurisdiction exists, then it should still dismiss Hogans's claim for lack of personal jurisdiction because Charter is not at home in Louisiana and her claim is unconnected to Charter's contacts in Louisiana.

Dated: August 14, 2020                              Respectfully submitted,

                                                    **KABAT CHAPMAN & OZMER LLP**

                                                    /s/ *Ryan D. Watstein*
                                                    Ryan D. Watstein
                                                    *pro hac vice*
                                                    rwatstein@kcozlaw.com
                                                    171 17th Street NW, Suite 1550
                                                    Atlanta, Georgia 30363
                                                    (404) 400-7300
                                                    (404) 400-7333 (fax)

                                                    Paul A. Grammatico
                                                    *pro hac vice*
                                                    pgrammatico@kcozlaw.com
                                                    333 S. Grand Ave., Suite 2225

Los Angeles, California 90071
(213) 493-3988
(404) 400-7333 (fax)

David E. Redmann, Jr. (No. 23,267)
**Bradley Murchison Kelly & Shea LLC**
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
(504) 596-6300
(504) 596-6307 (fax)
dredmann@bradleyfirm.com

*Counsel for Defendant Charter Communications, Inc.*