**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| Stacy Creasy and Tiffanie Hogans, *on behalf of themselves and others similarly situated*, | ) ) ) | Civil Action No.: 2:20-cv-01199-MLCF KWR |
| | ) | |
| Plaintiffs, | ) ) | Judge: Martin L.C. Feldman |
| | ) | Magistrate Judge: Karen Wells Roby |
| v. | ) ) | |
| Charter Communications, Inc. dba Spectrum, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**PLAINTIFFS' OPPOSITION TO CHARTER COMMUNICATIONS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# Table of Contents

Introduction ................................................................................................................ 1

Summary of Factual Allegations ................................................................................. 6

Argument ..................................................................................................................... 7

    I.    The TCPA regulates Defendant's conduct. .................................................... 7

    II.    Defendant misrepresents the holding of *AAPC*. ............................................ 9

        A.    *AAPC* did not declare that robocalls made to cellular telephone numbers between 2015 and 2020 are not actionable under the TCPA. ............................................. 9

        B.    *AAPC* clearly addresses the principles of severability and its application on the TCPA. ........................................................................................................................ 11

        C.    *AAPC* provides no basis for this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. .......................................................................................... 14

    III.    Even if *AAPC* resulted in the TCPA robocall prohibition being unconstitutional between 2015 and 2020, Ms. Creasy's remaining allegations survive. .................... 18

    IV.    This Court should retain personal jurisdiction over Ms. Hogans's claims. ................. 19

        A.    Requiring Plaintiffs to litigate materially identical cases against Defendant at the same time is inefficient and unnecessary. ........................................................... 19

        B.    This Court may exercise pendent personal jurisdiction over Ms. Hogans's claims... 20

        C.    If this Court declines to exercise jurisdiction over Ms. Hogans's claims, it should instead transfer her case to the Eastern District of North Carolina, and find that Defendant waives any right to stay her case under a "first-to-file" rule. ............................................. 23

Conclusion .................................................................................................................. 24

# Table of Authorities

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) .................... 21

*Allan v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-2043, 2020 WL 4345341 (6th Cir. July 29, 2020) ..................................................................................... 4

*Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 170 (4th Cir. 2019)................................................................................. 2, 4, 11

*Arredondo v. Flexi Corp.*, No. 5:17-CV-4, 2017 WL 7796192 (S.D. Tex. Aug. 18, 2017).......... 7

*Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) .......... passim

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017)............................................................................... 6, 22

*Burns v. Halsted Fin. Services, LLC*, No. 1:15-cv-4287-LMM-JKL, 2016 WL 5417218 (N.D. Ga. Sept. 14, 2016) ................................................................... 8

*Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303 (D. Neb. Aug. 5, 2020) ........ 3

*Caplan v. Budget Van Lines, Inc.*, No. 220CV130JCMVCF, 2020 WL 4430966 (D. Nev. July 31, 2020)..................................................................................... 14

*Cardenas v. Spinnaker Resorts, Inc.*, No. CV162466JLLJAD, 2016 WL 4154921 (D.N.J. Aug. 3, 2016) ..................................................................................... 19

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. CV 17-2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018) ............................................... 22

*Conwill v. Greenberg Traurig, L.L.P.*, No. CIV.A. 09-4365, 2009 WL 5178310 (E.D. La. Dec. 22, 2009)............................................................................... 21

*Crossley v. California*, No. 20-CV-0284-GPC-JLB, 2020 WL 4747723 (S.D. Cal. Aug. 17, 2020) ........................................................................................ 4

*Cunningham v. Upwell Health, LLC*, No. 419CV00894ALMCAN, 2020 WL 4723175 (E.D. Tex. July 21, 2020) ............................................................................ 4

*Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019)............................................. 4

*Edwards v. Conn's, Inc.*, No. 218CV01998APGBNW, 2020 WL 4018926 (D. Nev. July 16, 2020) ........................................................................................ 14

*Federal Deposit Ins. Corp. v. Kahlil Zoom-in Markets, Inc.*, 978 F.2d 183 (5th Cir. 1992)........ 23

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) ................................. 6, 18

*Geraci v. Red Robin Int'l, Inc.*, No. 1:19-cv-01826 (D. Colo. Feb. 28, 2020) .............................. 4

*Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716 (2d Cir. 1980) ....................................... 21

*Hartford Underwriters Ins. Co. v. Found. Health Servs., Inc.*, 359 F. Supp. 2d 1297 (M.D. La. 2005) ................................................................................................................. 23

*Hawkins v. Well Path, LLC*, No. 19 CV 8969 (VB), 2020 WL 4287447 (S.D.N.Y. July 27, 2020) ................................................................................................................. 4

*In re Ocean Ranger Sinking Off Newfoundland on Feb. 15, 1982*, 589 F. Supp. 302 (E.D. La. 1984) ................................................................................................................ 18

*Jayson Rogers v. Interstate Nat'l Dealer Servs. Inc.*, No. 1:20 CV 00554, 2020 WL 4582689 (N.D. Ohio Aug. 10, 2020) ................................................................................. 4, 14

*Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020) ............................................................................................................ 21

*Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 4698646 (W.D. Wash. Aug. 13, 2020) ..................................................................................... 3

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) ................................ 6, 18

*Pederson v. Trump*, No. CV 19-2735 (JRT/HB), 2020 WL 4288316 (D. Minn. July 26, 2020) ................................................................................................................ 14

*Peralta v. Rack Room Shoes, Inc.*, No. CV 18-3738, 2018 WL 6331798 (E.D. La. Dec. 3, 2018) ................................................................................................................. 7

*Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765 (N.D. Tex. 2008) ............................... 20

*Salerno v. Credit One Bank, N.A.*, No. 15-CV-516 (JLS), 2020 WL 4339219 (W.D.N.Y. July 28, 2020) ............................................................................................................. 3

*Saunders v. Sunrun, Inc.*, No. 19-CV-04548-HSG, 2020 WL 4601636 (N.D. Cal. Aug. 11, 2020) ................................................................................................................ 14

*Savett v. Great Am. Power, LLC*, No. 1:20 CV 42, 2020 WL 4227672 (N.D. Ohio July 23, 2020) ................................................................................................................ 14

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) .............................. 12, 16

*Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 862 (N.D. Cal. 2018) ............................. 22

*United States v. Miselis*, No. 19-4550, 2020 WL 5015072 (4th Cir. Aug. 24, 2020) .................... 3

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ............................... 6, 18

**Statutes**

47 U.S.C. § 227 ................................................................................................................. 1, 7

47 U.S.C. § 608 ...................................................................................................................... 5

La. Stat. § 51:1401 ................................................................................................................. 5

La. Stat. § 51:1409.1 .............................................................................................................. 5

La. Stat. § 51:1421 ................................................................................................................. 5

La. Stat. § 51:1424 ................................................................................................................. 5

**Treatises**

4A Wright & Miller § 106.7 ................................................................................................. 20

**Introduction**

Stacy Creasy and Tiffanie Hogans ("Plaintiffs") filed a class action against Charter Communications, Inc. dba Spectrum ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, based on allegations that Defendant violated a robocall prohibition— over one hundred times, by way of a mixture of text messages, telephone calls, and prerecorded voice messages—in place without interruption since 1991. Defendant, nevertheless, contends that for a period of time between 2015 and 2020 an unrelated exception to the TCPA—which affects none of Plaintiffs' allegations, and none of Defendant's defenses—precluded enforcement of the entire statute. Ergo, as Defendant sees it, Plaintiffs' claims—based in large part on calls Defendant placed from 2015 to 2020—must be dismissed.

In support of its argument, Defendant presents a meandering—albeit novel—series of arguments succinctly summarized as follows:

1)      The Supreme Court, through its decision in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), declared that the TCPA was unconstitutional for a period of time between 2015 and 2020, and the TCPA became constitutional again only after the Court published its decision in *AAPC*.

2)      As a result of *AAPC*, therefore, Plaintiffs' claims concerning calls and text messages Defendant sent prior to *AAPC* fail.

3)      Once every pre-*AAPC* text message and telephone call is stripped from Plaintiffs' amended class action complaint, the lone text message post-dating *AAPC*, which was apparently sent by a Spectrum subsidiary, is insufficient to provide standing.

4)      And lastly, Ms. Hogans' claims must be dismissed because she is not a resident of Louisiana, despite being added as an additional plaintiff to this already-pending action. That is,

Defendant thinks it more appropriate for Ms. Hogans to file a materially identical action in North Carolina, and for Plaintiffs' counsel to litigate materially identical actions in parallel.

But Defendant's arguments each fail. To start, Defendant's *AAPC*-specific argument rests on a fatally flawed foundation: that the TCPA as a whole "has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt collection exception in 2015 until the Court severed it in *AAPC*." ECF No. 30-1 at 3. But the Supreme Court did not declare as much, and Defendant's related portrayal and analysis of the *AAPC* decision is just plain wrong. To be sure, "[a]pplying traditional severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather the 2015 government-debt exception must be invalidated, and severed from the remainder of the statute." *AAPC*, 140 S. Ct. at 2343; *see also id.* at 2349 ("Therefore, we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional.").

The court then continued: "The judgment of the U.S. Court of Appeals for the Fourth Circuit is affirmed." *Id.* at 2356. Of course, the Fourth Circuit held that the government-backed debt exemption was unconstitutional, that it should be severed, that the TCPA as a whole remained enforceable, and that "severance of the debt-collection exemption will not undermine the automated call ban." *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 170 (4th Cir. 2019).

And if that were not enough, the Court took care in *AAPC* to specifically point out that "our decision today does not negate the liability of parties [like Defendant] who made robocalls covered by the robocall restriction." 140 S. Ct. at 2355 n.12.

Put simply, Defendant misrepresents the Supreme Court's holding in *AAPC*, which unambiguously upheld the constitutionality of the TCPA as a whole, and simply severed an

unconstitutional *exception* to the TCPA, which is not, never was, and simply could not be, at issue here. *Accord id.* at 2350 ("As Chief Justice Marshall later explained, if any part of an Act is 'unconstitutional,' the provisions of that part may be disregarded while full effect will be given to such as are not repugnant to the constitution of the United States. . . . . A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad") (internal citations omitted). And Defendant's argument otherwise flies in the face of the Supreme Court's plain language in *AAPC*.

Not surprising, then, is that *zero* courts endorse Defendant's reading of *AAPC*. *See, e.g.*, *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020) ("But while the Supreme Court invalidated the debt-collection exception, it severed the provision rather than striking down the TCPA's entire robocall restriction."); *Burton v. Fundmerica, Inc.*, No. 8:19-CV-119, 2020 WL 4504303, at *1 (D. Neb. Aug. 5, 2020) ("The Supreme Court held last month in *Barr* that one of the exceptions to this general prohibition, for calls made solely to collect a government debt, violated the First Amendment, but that it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived."); *Salerno v. Credit One Bank, N.A.*, No. 15-CV-516 (JLS), 2020 WL 4339219, at *3 (W.D.N.Y. July 28, 2020) ("The Court need not address this request for a stay because the Supreme Court issued its decision on July 6, 2020 and did not invalidate the TCPA as a whole. Thus, the request for a stay is denied as moot.").[1]

---

[1]    *See also United States v. Miselis*, No. 19-4550, 2020 WL 5015072, at *16 (4th Cir. Aug. 24, 2020) ("More recently, in [*AAPC*], a seven-member majority of the Court (including Justices Breyer, Ginsburg, Kagan, and Sotomayor, who concurred in the judgment with respect to severability) agreed that the government-debt exception to the Telephone Consumer Protection Act's robocall restriction—which the Court found also constituted an invalid time, place, and manner regulation, *see* 140 S. Ct. at 2346—could be excised from the remainder of the statute,

Also of note, every circuit court to analyze the issue before *AAPC* found that the TCPA was constitutional, but the government-backed debt exception must be severed, as it was an unconstitutional addition to the otherwise constitutional statute. *See Am. Ass'n of Political Consultants*, 923 F.3d at 171; *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156 (9th Cir. 2019); *accord Geraci v. Red Robin Int'l, Inc.*, No. 1:19-cv-01826, ECF No. 70 at 16-18 (D. Colo. Feb. 28, 2020) (holding that "the government-debt exception of the TCPA is severable and would have no impact on this case" and observing that "[t]o the best of the Court's knowledge, every court that has examined the issue of severability has determined that the TCPA's government-debt exception is severable").

Again, no court has held that the TCPA's general robocall prohibition was unconstitutional between 2015 and 2020. So, and as explained in greater detail *infra*, this Court should reject Defendant's motion outright because it is based on a false premise.

And even if Defendant was not incorrect concerning *AAPC*'s holding, its analysis is illogical in practical application. Indeed, that *AAPC* severed an unconstitutional provision not at

---

even though it consisted of a sentence fragment appended to a single subparagraph."); *Allan v. Pa. Higher Educ. Assistance Agency*, No. 19-2043, 2020 WL 4345341, at *6 (6th Cir. July 29, 2020) (citing *AAPC*, and noting that the decision severed an unconstitutional *addition* to the TCPA not at issue in this case "so that political automated calls would be 'treated equally with debt-collection speech.'"); *Crossley v. Cal.*, No. 20-CV-0284-GPC-JLB, 2020 WL 4747723, at *8 (S.D. Cal. Aug. 17, 2020) ("The [*AAPC*] plaintiffs challenged the TCPA carve out under the First Amendment and argued that it could not be severed from the robocalling ban, thereby rendering the entire ban unconstitutional. The Supreme Court found the carve out provision violated the First Amendment since it impermissibly favored debt-collection speech over other speech and severed it from the remainder of the TCPA."); *Cunningham v. Upwell Health, LLC*, No. 419CV00894ALMCAN, 2020 WL 4723175, at *6 (E.D. Tex. July 21, 2020), *report and recommendation adopted,* No. 4:19-CV-894, 2020 WL 4698322 (E.D. Tex. Aug. 13, 2020) (dismissing TCPA claims *without* prejudice, while citing *AAPC*); *Jayson Rogers v. Interstate Nat'l Dealer Servs. Inc.*, No. 1:20 CV 00554, 2020 WL 4582689, at *1 (N.D. Ohio Aug. 10, 2020) (citing *AAPC*, and denying motion to dismiss claims based on calls from 2019); *Hawkins v. Well Path, LLC*, No. 19 CV 8969 (VB), 2020 WL 4287447, at *1 (S.D.N.Y. July 27, 2020) (citing *AAPC*, and denying motion to dismiss claims based on calls from 2019).

issue here—and never at issue here—does not suddenly compel the conclusion that the entire regulatory scheme and statute is suddenly invalidated. *AAPC*, of course, addressed this precise issue when analyzing the application of general severability principles and the express intent of Congress, which was made clear by the TCPA's severability clause: "If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." 47 U.S.C. § 608; *see also AAPC*, 140 S. Ct. at 2353-54 ("[T]he text of the Communications Act's severability clause requires that the Court sever the 2015 government-debt exception from the remainder of the statute. And even if the text of the severability clause did not apply here, the presumption of severability would require that the Court sever the 2015 government-debt exception from the remainder of the statute.").

By way of analogy, Defendant's logic suggests that if the Supreme Court ruled that the Louisiana Unfair Trade Practices and Consumer Protection Law's[2] requirement that "[a]ny person who is in the business of making house calls for the purpose of repairing home appliances shall disclose to the person requesting his services the amount of the service charge for which the person will be billed," was unconstitutional, then the statute's unrelated prohibitions against electronic elder deception,[3] unauthorized collection of personal information,[4] and even the regulation of commercial laundromats[5] also necessarily fail, because "the Court cannot impose liability against

---

[2]      La. Stat. § 51:1401 *et seq.*

[3]      La. Stat. § 51:1409.1.

[4]      La. Stat. § 51:1421.

[5]      La. Stat. § 51:1424.

[a defendant] for violating the [Unfair Trade Practices and Consumer Protection Law] during the time it was constitutionally infirm." ECF No. 30-1 at 16. This is not a correct result.[6]

Lastly, Defendant argues that Ms. Hogans must be dismissed as a plaintiff in this case due to her lack of ties to the Eastern District of Louisiana, and the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773 (2017) ("*Bristol-Myers*"). However, Defendant's argument concerning personal jurisdiction over Ms. Hogans would accomplish little more than increasing litigation expenses by requiring Plaintiffs to litigate parallel and materially identical actions. As such, this Court may exercise pendent personal jurisdiction over Defendant with respect to Ms. Hogans's claims.

### Summary of Factual Allegations

Plaintiffs allege that Defendant violated the TCPA by delivering text messages and placing telephone calls to their cellular telephone numbers, using an automatic telephone dialing system ("ATDS"), as well as an artificial or prerecorded voice, absent prior express consent. *See generally* ECF No. 24. Specifically, Plaintiffs allege that Defendant placed calls and delivered text messages to Ms. Creasy's cellular telephone number over 30 times—including at least 18 calls or text messages after Ms. Creasy filed her original complaint—and at least one hundred times to Ms. Hogans's cellular telephone number. *Id.* Each of these communications was directed to unknown

---

[6]     And even if, for the sake of argument, Defendant were correct in its reading of *AAPC*, Ms. Creasy has standing to bring her claims over the remaining text message Defendant delivered post-*AAPC*. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041, 1043 (9th Cir. 2017) (finding that "the allegation that [plaintiff] received two text messages" is "a concrete injury in fact sufficient to confer Article III standing."); *accord Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes."); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88, 93 (2d Cir. 2019) (allegations of "unwanted texts" confers standing, because "text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA."); *see also infra* Argument § III.

third parties that Plaintiffs did not know, and with whom Plaintiffs had, and have, no relationship. *Id.* at ¶¶ 65-68. And these communications continued despite Plaintiffs texting Defendant to stop, *id.* at ¶¶ 24, 57, answering Defendant's calls and informing Defendant it was calling a wrong number, or using IVR prompts to instruct Defendant it was calling a wrong number, *id.* at ¶¶ 19-22, and calling Defendant to tell it that it was calling a wrong number. *Id.* at ¶¶ 54-55. Indeed, Defendant's calls and messages to Ms. Creasy continued long after she filed her complaint.

In response to Plaintiffs' amended complaint, Defendant moved to dismiss their claims for lack of subject matter jurisdiction, and further moved to dismiss Ms. Hogans's claims for lack of personal jurisdiction. ECF No. 30.

## Argument

### I. The TCPA regulates Defendant's conduct.

"Automated telephone calls, colloquially referred to as 'robocalls,' have ravaged both the landlines and mobile telephone lines of millions of American households throughout the years." *Peralta v. Rack Room Shoes, Inc.*, No. CV 18-3738, 2018 WL 6331798, at *1 (E.D. La. Dec. 3, 2018) (Ashe, J.). "In response to rising consumer discontent with the seemingly endless proliferation of automated telephone calls, Congress, in 1991, enacted the TCPA with the primary aim of restricting automated telephone calls to both residential telephone lines as well as to telephone numbers assigned to a cellular telephone service." *Id.*

At issue here, "[s]ection 227(b)(1)(A)(iii) of the TCPA generally prohibits any person, absent the prior express consent of the recipient, from making any call using any [ATDS] to any telephone number assigned to a cellular telephone service." *Arredondo v. Flexi Corp.*, No. 5:17-CV-4, 2017 WL 7796192, at *1 (S.D. Tex. Aug. 18, 2017). The TCPA additionally—and separately—prohibits any person from placing calls to a consumer's cellular telephone number using "an artificial or prerecorded voice," absent the prior express consent of the recipient. 47

U.S.C. § 227(b)(1)(A)(iii); *see also Burns v. Halsted Fin. Servs., LLC*, No. 1:15-cv-4287-LMM-JKL, 2016 WL 5417218, at \*5 (N.D. Ga. Sept. 14, 2016) ("Although Plaintiff complains that he received two telephone calls from Defendant, he has identified four distinct violations of the TCPA—two for each call. In particular, each call used an automatic telephone dialing system and used an artificial or prerecorded message.").

Relevant to *AAPC*—but not at issue here:

Twenty-four years [after the TCPA was enacted], in 2015, Congress passed and President Obama signed the Bipartisan Budget Act. In addition to making other unrelated changes to the U. S. Code, that Act amended the TCPA's restriction on robocalls to cell phones. It stated:

(a) In General.—Section 227(b) of the Communications Act of 1934 (47 U.S.C. 227(b)) is amended—

(1) in paragraph (1)—

(A) in subparagraph (A)(iii), by inserting ", unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]"

*AAPC*, 140 S. Ct. at 2344-45.

"In other words, Congress carved out a new government-debt exception to the general robocall restriction." *Id.*

Plaintiffs, through their amended complaint, allege that Defendant violated § 227(b)(1)(A)(iii) of the TCPA by repeatedly placing telephone calls and delivering text messages to their cellular telephone numbers through the use of an ATDS, as well as an artificial or prerecorded voice, concerning payment due dates and administrative matters such as technician appointments. None of these calls concerned an attempt "to collect a debt owed to or guaranteed by the United States," and Defendant does not contend that the exception at issue in *AAPC* applied to any of Plaintiffs' allegations.

## II. Defendant misrepresents the holding of *AAPC*.

Defendant argues that *AAPC* held that the TCPA was unconstitutional from the moment Congress implemented the government-backed debt exception in 2015 to the moment the Supreme Court severed the exception, and so all calls that Defendant made before the exception was severed are not actionable. Defendant is wrong. Having said that, Defendant, through a paragraph in its motion to dismiss analyzing *AAPC*, correctly notes that the issues before the court were "[1] [w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and [2] whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." ECF No. 30-1 at 7-8. But from that line onwards, Defendant's analysis lacks support.

### A. *AAPC* did not declare that robocalls made to cellular telephone numbers between 2015 and 2020 are not actionable under the TCPA.

In *AAPC*, the plaintiff political consultants made calls to citizens to discuss candidates and issues, solicit donations, conduct polls, and improve voter turnout; and in doing so they claimed that their political outreach would be more effective and efficient if they could also make robocalls to cell phones. *See generally* 140 S. Ct. 2335. As a result, they challenged the 2015 amendment to the TCPA which carved out an exception to the general prohibition against robocalling for government-backed debt collection. *Id.* at 2343. "Invoking the First Amendment, they argue that the 2015 government-debt exception unconstitutionally favors debt-collection speech over political and other speech. As relief from that unconstitutional law, they urge us to invalidate the entire 1991 robocall restriction, rather than simply invalidating the 2015 government-debt exception." *Id.*

In summarizing the outcome of *AAPC*, the Supreme Court stated:

Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First

Amendment. *Applying traditional severability principles, seven Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.* As a result, plaintiffs still may not make political robocalls to cell phones, but their speech is now treated equally with debt-collection speech. The judgment of the U. S. Court of Appeals for the Fourth Circuit [severing the government-backed debt exemption, but upholding the TCPA's constitutionality] is affirmed.

*Id.* at 2343-44 (emphasis added).

And while Defendant correctly notes that six Justices agreed that the government-backed debt exception was unconstitutional, *see* ECF No. 30-1 at 12, it curiously omits that *seven* Justices agreed that the TCPA should not be invalidated, and that severing the challenged exception was the appropriate remedy. Moreover , Defendant argues that the *AAPC* decision invalidated the TCPA's robocall provision prior to the publication of the decision. *See id.* at 3 ("[as a result of *AAPC*] the automated-call ban has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC.*"); *id.* at 22 ("*AAPC* held that the TCPA's automated-call ban was an unconstitutional content-based restriction when combined with the government debt exception that was enacted in 2015 and in place until the Supreme Court severed it on July 6, 2020.").

But the Court was unambiguous in its holding to the contrary when it rejected a broader challenge to the robocall provision:

> Having concluded that the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction, we must decide whether to invalidate the entire 1991 robocall restriction, or instead to invalidate and sever the 2015 government-debt exception. Before we apply ordinary severability principles, we must address plaintiffs' broader initial argument for why the entire 1991 robocall restriction is unconstitutional. . . . the government-debt exception is only a slice of the overall robocall landscape. This is not a case where a restriction on speech is littered with exceptions that substantially negate the restriction. . . . Therefore, we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional.

140 S. Ct. at 2348-49.

As a result, the Court bluntly stated that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355, n.12. The Court reiterated this result in its conclusion:

> We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute. The judgment of the U. S. Court of Appeals for the Fourth Circuit is affirmed.

*Id.* at 2356.

And, to be abundantly clear, the "judgment of the U. S. Court of Appeals for the Fourth Circuit"—which the Supreme Court affirmed—held that the government-backed debt exemption was unconstitutional, should be severed, and that the underlying TCPA remained enforceable: "severance of the debt-collection exemption will not undermine the automated call ban." *Am. Ass'n of Political Consultants*, 923 F.3d at 171.

## B. *AAPC* clearly addresses the principles of severability and its application on the TCPA.

Further driving home the flaws in Defendant's analysis of *AAPC*, the Supreme Court engaged in an extensive analysis of general severability principles and their application to the TCPA, in order to address the very issues Defendant complains of.

First, the Supreme Court outlined its general principles governing severability when a severability clause is included in a statute:

> When enacting a law, Congress sometimes expressly addresses severability. For example, Congress may include a *severability* clause in the law, making clear that the unconstitutionality of one provision does not affect the rest of the law. See, *e.g.*, 12 U.S.C. § 5302; 15 U.S.C. § 78gg; 47 U.S.C. § 608. Alternatively, Congress may include a *nonseverability* clause, making clear that the unconstitutionality of one provision means the invalidity of some or all of the remainder of the law, to the extent specified in the text of the nonseverability clause. See, *e.g.*, 4 U.S.C. § 125; note following 42 U.S.C. § 300aa–1; 94 Stat. 1797.

When Congress includes an express severability or nonseverability clause in the relevant statute, the judicial inquiry is straightforward. At least absent extraordinary circumstances, the Court should adhere to the text of the severability or nonseverability clause. That is because a severability or nonseverability clause leaves no doubt about what the enacting Congress wanted if one provision of the law were later declared unconstitutional. A severability clause indicates "that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). And a nonseverability clause does the opposite.

On occasion, a party will nonetheless ask the Court to override the text of a severability or nonseverability clause on the ground that the text does not reflect Congress's "actual intent" as to severability. That kind of argument may have carried some force back when courts paid less attention to statutory text as the definitive expression of Congress's will. But courts today zero in on the precise statutory text and, as a result, courts hew closely to the text of severability or nonseverability clauses. See *Seila Law LLC* v. *Consumer Financial Protection Bureau*, —— U.S. ——, ——, —— S.Ct. ——, ——, —— L.Ed.2d —— (2020) *ante*, at 33, 2020 WL 3492641 (plurality opinion); cf. *Milner v. Department of Navy*, 562 U.S. 562, 569–573, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011).

*AAPC*, 140 S. Ct. at 2349.

The Supreme Court then applied those principles governing severability to the government-

debt exception:

Recall how this statute came together. Passed by Congress and signed by President Franklin Roosevelt in 1934, the Communications Act is codified in Title 47 of the U. S. Code. The TCPA of 1991 amended the Communications Act by adding the robocall restriction, which is codified at § 227(b)(1)(A)(iii) of Title 47. The Bipartisan Budget Act of 2015 then amended the Communications Act by adding the government-debt exception, which is codified along with the robocall restriction at § 227(b)(1)(A)(iii) of Title 47.

Since 1934, the Communications Act has contained an express severability clause: "If any provision of *this chapter* or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." 47 U.S.C. § 608. The "chapter" referred to in the severability clause is Chapter 5 of Title 47. And Chapter 5 in turn encompasses § 151 to § 700 of Title 47, and therefore covers § 227 of Title 47, the provision with the robocall restriction and the government-debt exception.

> Enacted in 2015, the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction. The text of the severability clause squarely covers the unconstitutional government-debt exception and requires that we sever it.

*Id.* at 2352.

To be doubly sure, however, the Supreme Court also analyzed severability through the lens of its general principles *even if* Congress omitted a severability clause from the TCPA:

> [I]t is sometimes said that courts applying severability doctrine should search for other indicia of congressional intent. For example, some of the Court's cases declare that courts should sever the offending provision unless "the statute created in its absence is legislation that Congress would not have enacted." *Alaska Airlines*, 480 U.S., at 685, 107 S.Ct. 1476. But experience shows that this formulation often leads to an analytical dead end. That is because courts are not well equipped to imaginatively reconstruct a prior Congress's hypothetical intent. In other words, absent a severability or nonseverability clause, a court often cannot really know what the two Houses of Congress and the President from the time of original enactment of a law would have wanted if one provision of a law were later declared unconstitutional.

> The Court's cases have instead developed a strong presumption of severability. The Court presumes that an unconstitutional provision in a law is severable from the remainder of the law or statute.

*Id.* at 2350.

Applying those general principles in the absence of an express severability clause, the Supreme Court reiterated that the outcome would be the same:

> Even if the severability clause did not apply to the government-debt provision at issue in this case (or even if there were no severability clause in the Communications Act), we would apply the presumption of severability as described and applied in cases such as *Free Enterprise Fund*. And under that presumption, we likewise would sever the 2015 government-debt exception, the constitutionally offending provision.

> With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law. Indeed, the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015.

*Id.* at 2352-53.

Lastly, the Supreme Court addressed the practical consequences of severability analysis in equal-treatment challenges, explaining that it would "thereby extend[] the relevant statutory benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all." *Id.* at 2354. And, although this could lead to "complex" or "knotty questions" in certain circumstances, "here, we need not tackle all of the possible hypothetical applications of severability doctrine in equal-treatment cases. The government-debt exception is a relatively narrow exception to the broad robocall restriction, and severing the government-debt exception does not raise any other constitutional problems." *Id.* at 2354-55.[7]

So, at bottom, there can be no doubt that the Supreme Court severed the government-debt exception from the TCPA, while leaving the rest of the robocall prohibition "fully operative as a law." *Id.* at 2353.

### C. *AAPC* provides no basis for this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

Despite (1) the *AAPC* decision's clear conclusion, *see supra* Argument §§ II.A-B; (2) the Court stating that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction," *AAPC*, 140 S. Ct. at 2355, n.12; (3) the unanimous authority that has since cited or analyzed *AAPC*, *see supra* n.1; (4) and the analysis of every single district court to review the merits of TCPA cases since *AAPC*,[8] Defendant nevertheless contends that "the

---

[7]     As a result, *AAPC*'s holding is readily distinguishable from political-speech focused discrimination favoring one of the presidential campaigns, which Defendant erroneously suggests is analogous. *See* ECF No. 30-1 at 4.

[8]     *See Saunders v. Sunrun, Inc.*, No. 19-CV-04548-HSG, 2020 WL 4601636, at *4 (N.D. Cal. Aug. 11, 2020) (denying motion to dismiss TCPA claims based on text messages and prerecorded voice calls in 2019); *Jayson Rogers*, 2020 WL 4582689, at *1 (same, involving 2019 prerecorded voice calls); *Caplan v. Budget Van Lines, Inc.*, No. 220CV130JCMVCF, 2020 WL 4430966, at *1

14

automated-call ban has been unconstitutional, and thus entirely unenforceable, from the enactment of the government debt exception in 2015 until the Court severed it in *AAPC*." ECF No. 30-1 at 3. In doing so, Defendant implicitly argues every other court to examine the TCPA in the months since *AAPC* missed that those claims are supposedly moot. But it crafts this argument by manufacturing controversy where none exists.

First, Defendant's characterization of Justice Kavanaugh's statement that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction" as a mere "suggestion" is unfounded, because (1) contrary to Defendant's statement— Justices Gorsuch and Thomas do not state that such language is a non-binding suggestion; *compare* ECF No. 30-1 at 12 (suggesting this language is a "non-binding 'suggestion'") with *AAPC*, 140 S. Ct. at 2363 (making no reference to that language as a "non-binding 'suggestion'"); and (2) a seven-justice majority agreed that the TCPA is constitutional and the general robocall prohibition remains in force. *Id.* at 2343-44.[9] Nothing about Justice Kavanaugh's statement is "admittedly

_____

(D. Nev. July 31, 2020) (same, involving prerecorded voice mails); *Pederson v. Trump*, No. CV 19-2735 (JRT/HB), 2020 WL 4288316, at *2 (D. Minn. July 26, 2020) (denying motion to certify interlocutory appeal of the court's prior denial of a motion to dismiss TCPA claims); *Savett v. Great Am. Power, LLC*, No. 1:20 CV 42, 2020 WL 4227672, at *4 (N.D. Ohio July 23, 2020) (denying defendant's motion for summary judgment of TCPA claims); *Edwards v. Conn's, Inc.*, No. 218CV01998APGBNW, 2020 WL 4018926, at *2 (D. Nev. July 16, 2020) (denying motion to dismiss TCPA claims following *AAPC*, involving allegations of calls made with an ATDS and a prerecorded voice).

[9]     In fact, it seems that Defendant counts the votes in favor of upholding *both* the government-backed debt exception *and* the TCPA's broader robocall prohibition as votes *against* the broader robocall prohibition, since—in addition to the three-justice plurality writing the Court's opinion— Justices Breyer, Ginsburg, and Kagan wrote that they would have upheld the government-debt exception's constitutionality, but given the contrary majority view, agreed that the provision was severable from the rest of the statute. *See AAPC*, 140 S. Ct. at 2357 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part). No combination of votes could lead one to conclude that a majority of Justices supports the argument that the TCPA's robocall prohibition was unconstitutional between 2015 and 2020.

ambiguous," nor is there any context that indicates that it applies only to "past judgments," as Defendant suggests. *Compare* ECF No. 30-1 at 12 *with supra* Argument §§ II.A-B. Rather, Defendant's interpretation of that language—and the *AAPC* decision as a whole—is a wholly self-serving reading that attempts to introduce ambiguity that is contrary to the plain language of the decision.

Next, Defendant's recitation of *Seila Law LLC v. Consumer Fin. Prot. Bureau*, and the parade of horribles it suggests may follow a denial of its motion, simply ignores the reality of this case and the *AAPC* decision. 140 S. Ct. 2183 (2020). *Seila Law* was decided before *AAPC* and cited multiple times within the decision, so Defendant's position that a reading of *AAPC* "cannot reasonably be interpreted" to allow continued enforcement of the TCPA robocall provision in light of *Seila Law* falls particularly flat. *See generally AAPC*, 140 S. Ct. at 2350-52 (repeatedly discussing *Seila Law* in the severability analysis). If the Supreme Court intended for *Seila Law* to dictate that the government-backed debt exception would render ineffective the TCPA's broad prohibition on robocalling cellular telephone numbers without consent, it would have said so, rather than reiterating that the exception was severable and that the TCPA's prohibitions remain in effect. *See AAPC*, 140 S. Ct. at 2355, n.12 ("our decision today does not negate the liability of parties [like Defendant] who made robocalls covered by the robocall restriction."). Defendant's attempt to analogize *AAPC*'s holding to *Seila Law* ignores this simple reality.[10]

---

[10]    Similarly, Defendant's analogies to unfair and one-sided regulation of political campaign speech appear to mirror Justice Gorsuch's concerns in his dissent, where he argued that severing the government-backed debt exception provided inadequate relief for AAPC, and that injunctive relief would instead be appropriate, while also arguing that "the TCPA's rule against cellphone robocalls [in its entirety] is a content-based restriction that fails strict scrutiny." *AAPC*, 140 S. Ct. at 2364 (Gorsuch, J., dissenting). The majority rejected this position, and Justice Kavanaugh addressed it—and Defendant's current argument—directly:

To further drive this point home, an article analyzing the impact of *AAPC* for insideARM, an organization providing compliance analysis for "executives within collection agencies and law firms, debt buyers, creditors, suppliers of technology and services, regulators, investors, and other interested parties,"[11] summarized *AAPC*'s impact:

> [I]n [*AAPC*], the Supreme Court did not strike down the TCPA the way it was supposed to. Instead, focusing on the importance of preventing robocalls, the Supreme Court struck down solely the exemption *permitting* speech and expanded the TCPA to cover even more speech. . . . Against this backdrop, the impact [*AAPC*] has on the actual TCPA is almost immeasurably small. The ruling is extremely narrow and tightly confined. It does not move the needle on TCPA jurisprudence *at all* except to expand the statute to reach collectors of government-backed debt again.

www.insidearm.com/news/00046465-dark-day-free-speech-supreme-court-uphold/ (last visited August 27, 2020).

Ultimately, all of Defendant's arguments obfuscate a simple reality: Plaintiffs allege that Defendant violated the robocall prohibition in the TCPA. The robocall prohibition is constitutional, and has been since 1991. *AAPC* affirmed this. And curing a separate infirmity not at issue here does not implicitly render the rest of the statute unenforceable. And, if it did, the

---

Justice GORSUCH's approach to this case would not solve the problem of harming strangers to this suit; it would just create a different and much bigger problem. His proposed remedy of injunctive relief, plus *stare decisis*, would in effect allow all robocalls to cell phones—notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones. That is not a judicially modest approach but is more of a wolf in sheep's clothing. That approach would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted. Justice GORSUCH's remedy would end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.

*Id.* at 2356.

11    *See* https://www.insidearm.com/about/ (last visited August 27, 2020).

Supreme Court would have said so. Instead, it said the opposite.

### III. Even if *AAPC* resulted in the TCPA robocall prohibition being unconstitutional between 2015 and 2020, Ms. Creasy's remaining allegations survive.

Briefly setting aside Defendant's flawed premise, even if the Court agreed that *AAPC* held that all robocalls or text messages between 2015 and 2020 were not prohibited by the TCPA, Ms. Creasy's remaining allegation concerning a post-*AAPC* text message is sufficient to confer standing. Although the Fifth Circuit has not expressly addressed this issue, the Ninth Circuit, in *Van Patten*, concluded that a plaintiff who alleged that a defendant sent two text messages "alleged a concrete injury in fact sufficient to confer Article III standing." 847 F.3d at 1043. The Seventh and Second Circuits concur that the receipt of such text messages absent prior express consent is sufficient to confer standing. *See Gadelhak*, 950 F.3d at 463 ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes."); *Melito*, 923 F.3d at 93 (same). Defendant's argument to the contrary is conclusory and lacking any relevant support.

Additionally, Defendant claims—again in conclusory fashion—that Plaintiffs name the wrong entity as a defendant *solely* with respect to the delivery of the final text message received by Ms. Creasy. *See* ECF No. 30-1 at 16-17 (claiming that Spectrum Mobile—a Charter affiliate and subsidiary—sent the final message at issue). Perhaps Spectrum Mobile should be added as an additional defendant, but the facts alleged by Plaintiffs paint a rather clear picture: Defendant delivered at least 30 text messages and calls, allegedly in violation of the TCPA, to Ms. Creasy's cellular telephone number, *see* ECF No. 24 at ¶¶ 12-42, and Defendant now suggests that one of its subsidiaries may be responsible for a single one of those text messages. If so, the pervasiveness of Defendant's violations of the TCPA across its business lines suggests that the fault and control lies with Defendant, rather than its subsidiary, given that at least 29 of the 30 telephone calls and

text messages at issue appear to originate from Defendant. As a result, the Court may infer that Defendant is liable for this message, too, under traditional agency principles. *See, e.g.*, *In re Ocean Ranger Sinking Off Newfoundland on Feb. 15, 1982*, 589 F. Supp. 302, 311 (E.D. La. 1984) (personal jurisdiction satisfied when subsidiaries are controlled by parent); *Cardenas v. Spinnaker Resorts, Inc.*, No. CV162466JLLJAD, 2016 WL 4154921, at *4 (D.N.J. Aug. 3, 2016) (finding that "Plaintiff has sufficiently alleged with reasonable particularity that personal jurisdiction may exist over [the parent company] via agency principles"). The alternative is that Spectrum Mobile, by an implausible coincidence, also began contacting the same person as Defendant, for the same overarching business goals, during the same time period, while lacking the same prior express consent, yet for reasons entirely unrelated to Defendant.

But ultimately this is of no consequence, given that Defendant's threshold argument—that *AAPC* mandates the dismissal of all of Plaintiffs' claims predating the decision—is incorrect. However, to the extent that the Court agrees with Defendant that its subsidiary is responsible for the final text message delivered to Ms. Creasy, Plaintiffs should be granted leave to amend to add Spectrum Mobile as an additional defendant, but their claims should not be dismissed.

## IV. This Court should retain personal jurisdiction over Ms. Hogans's claims.

Lastly, Defendant contends that Ms. Hogans's claims should be dismissed because the Court lacks personal jurisdiction over her. However, Defendant seeks to introduce a panoply of inefficiencies by suggesting that Plaintiffs split their claims and litigate them in parallel, which can be resolved by this Court exercising pendent personal jurisdiction over Ms. Hogans's claims.

### A. Requiring Plaintiffs to litigate materially identical cases against Defendant at the same time is inefficient and unnecessary.

For the sake of argument, setting aside whether Ms. Hogans is subject to pendent personal jurisdiction in this case, Defendant's suggestion is impractical. First, if this Court were to find that

it lacks jurisdiction over Ms. Hogans's claims, the end result would be that Ms. Hogans would file a materially identical action halfway across the country, with the same allegations, the same defendant, and the same legal issues.

Ironically—given this entirely predictable result—Defendant also suggests that the Court stay this case in order to conserve judicial resources, and Defendant's own resources, while awaiting a Supreme Court decision on an issue that will not dispose of Plaintiffs' claims, and will not obviate the need for ongoing discovery. *See* ECF No. 31-1 at 13-14. In sum, Defendant simultaneously protests the need to engage in litigation in one case, while claiming to protect "the Court, which will have to expend substantial resources deciding significant motions and policing discovery," while also suggesting that it split—and double—this case. *Id.* at 14. This inconsistency completely undermines *both* of Defendant's pending motions.

Because of these factors, and for the reasons explained in greater detail below, this Court should not dismiss Ms. Hogans's claims for lack of personal jurisdiction, but it should find that Defendant's desire to litigate parallel actions undermines its claimed prejudice in support of its motion to stay.

### B. This Court may exercise pendent personal jurisdiction over Ms. Hogans's claims.

As a result of the practical considerations weighing against dismissal of Ms. Hogans's claims, this Court is entitled to exercise pendent personal jurisdiction over Ms. Hogans's claims.

The Northern District of Texas explained the doctrine of pendent personal jurisdiction in

*Rolls-Royce Corp. v. Heroes, Inc.*:

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.

576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (citing *United States v. Botefur*, 309 F.3d 1263, 1272-73 (10th Cir. 2002)); *see also* 4A Wright & Miller § 106.7 (explaining pendent personal jurisdiction: "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court").

"Although the Fifth Circuit has not yet addressed the issue of pendent personal jurisdiction, most federal courts that have addressed it have upheld the doctrine of pendent personal jurisdiction." *Conwill v. Greenberg Traurig, L.L.P.*, No. CIV.A. 09-4365, 2009 WL 5178310, at *8 (E.D. La. Dec. 22, 2009) (Africk, J.) (adding that "[s]everal district courts within the Fifth Circuit have exercised discretionary pendent jurisdiction over non-RICO claims where the district court found it had jurisdiction over the RICO claim and the non-RICO claims arose from the same nucleus of operative facts.") (collecting cases); *accord Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other *claims* in the same suit arising out of a common nucleus of operative facts") (emphasis added); *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980) (under the doctrine of pendent personal jurisdiction, when a court has specific jurisdiction over some of the claims in an action, it may hear the remaining claims through pendent jurisdiction "[i]f all of plaintiffs' claims derive from a common nucleus of operative fact such that they would ordinarily be expected to be tried in one judicial proceeding.").

Ultimately, situations like the one before this Court—where an amended complaint adds an additional named plaintiff to a national class action with materially identical facts and applying the same law—are ideal for the exercise of pendent personal jurisdiction, since Defendant cannot

reasonably argue that it will "be severely inconvenienced" by litigating the materially identical and already-pending TCPA claims in this District. *Conwill*, 2009 WL 5178310, at *8; *see also Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *8 n.2 (N.D. Cal. Apr. 20, 2020) ("The exercise of pendent personal jurisdiction is particularly appropriate in putative nationwide class actions, like the present case.").[12]

Applying these principles, in *Sloan v. Gen. Motors LLC*, the court exercised pendent personal jurisdiction over nonresident plaintiffs' claims in a nationwide class action. 287 F. Supp. 3d 840, 862 (N.D. Cal. 2018). The court in *Sloan* based its ruling on three factors: First, the court recognized that it "may well have jurisdiction over absent class members (including the named out-of-state plaintiffs) who are non-forum residents." *Id.* at 861. Second, "the exercise of personal jurisdiction over the non-resident Plaintiffs' claims in this case will impose only a de minimis burden on [defendant]." *Id.* Third, if the court "were to decline to exercise jurisdiction, [defendant] would face piecemeal litigation and would have to defend itself in several different courts on nearly identical issues. Because the claims at issue arise out of the same nucleus of operative facts, the adjudication of facts in those disparate proceedings would be likely to overlap and possibly to conflict with proceedings in this case." *Id.* at 862. That is precisely the case here.

First, the Court indisputably has jurisdiction over Ms. Creasy's claims, as well as the claims of the absent class members Plaintiffs seek to represent. *See, e.g.*, *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. CV 17-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) (Engelhardt, J.) ("Thus, the Court does not construe *Bristol-Myers* as barring its exercise of

---

[12] However, pendent personal jurisdiction typically applies where the same plaintiff has both state and federal claims, and less so in situations where an amended complaint adds additional out-of-state class representatives. *See generally Conwill*, 2009 WL 5178310, at *9. To be sure, "the exercise of pendent personal jurisdiction is discretionary, not automatic." *Id.*

jurisdiction over the purported nonresident plaintiffs' claims in the instant putative class action."). Second, the exercise of personal jurisdiction over Ms. Hogans's claims will aid judicial economy and *lessen* the burden on Defendant compared to litigating two parallel actions at the same time in Louisiana and North Carolina. Lastly, Plaintiffs' claims arise from the same "common nucleus of operative facts"—Plaintiffs each received unsolicited calls and text messages from Defendant, intended for unknown third parties, in violation of the TCPA.

As a result, because the Court has specific jurisdiction over Ms. Creasy's claims against Defendant, it may exercise pendent personal jurisdiction over Ms. Hogans's materially identical claims as well.

### C. If this Court declines to exercise jurisdiction over Ms. Hogans's claims, it should instead transfer her case to the Eastern District of North Carolina, and find that Defendant waives any right to stay her case under a "first-to-file" rule.

Lastly, in the event that this Court declines to exercise jurisdiction over Ms. Hogans's claims, rather than dismiss her claims, it should instead transfer her case to the Eastern District of North Carolina, where Ms. Hogans resides.

Under 28 U.S.C. § 1631, a district court may transfer a case elsewhere if such a transfer is based on lack of jurisdiction in the transferor court and "in the interest of justice." *See Fed. Deposit Ins. Corp. v. Kahlil Zoom-in Markets, Inc.*, 978 F.2d 183, 184 (5th Cir. 1992) ("By its very terms, [§ 1631] may be utilized only for a transfer from a court that lacks jurisdiction."). But in doing so, Defendant should not be entitled to stay Ms. Hogans's action based on the pendency of Ms. Creasy's case, as the traditional interests in avoiding multiplicity of actions would be caused solely by Defendant's actions. *See Hartford Underwriters Ins. Co. v. Found. Health Servs., Inc.*, 359 F. Supp. 2d 1297, 1300 (M.D. La. 2005) (noting that "[t]he Fifth Circuit has set forth general principles which are designed so as to avoid duplicative litigation between federal courts handling

the same or similar matters," and that "the 'first-to-file' rule" is intended to prevent "the possibility of courts issuing different rulings in similar litigation[.]"). Put simply, the interest of justice would not support Defendant causing litigation to be duplicated, and then precluding that litigation from continuing. At bottom, Ms. Hogans is entitled to litigate her TCPA claims against Defendant in *some* forum, and Plaintiffs believe that it would be most efficient and just to litigate them here.

## Conclusion

Plaintiffs respectfully request that this Court deny Defendant's motion in its entirety.

Date: September 8, 2020

/s/ *Aaron D. Radbil*
Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
aradbil@gdrlawfirm.com

Katherine Z. Crouch
Crouch Law, LLC
2372 St. Claude Avenue, Suite 224
New Orleans, Louisiana 70117
Phone: 504-982-6995
Fax: 888-364-5882

Counsel for Plaintiffs and the proposed classes