# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STACY CREASY and TIFFANY HOGANS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., dba SPECTRUM,<br><br>Defendant. | Civil Action No. 2:20-cv-1199-F-4<br><br>Judge: Martin L.C. Feldman<br><br>Magistrate Judge: Karen Wells Roby |

## DEFENDANT CHARTER COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. *AAPC* Deemed One Statutory Section, Not The Entire TCPA, Unconstitutional From 2015 To July 6, 2020, And Plaintiffs Cite No Authority To Rebut Charter's Point That the Section Cannot Be Enforced During That Period..........................................................................................2

    B. The Three-Justice Dicta In Footnote 12 Of *AAPC* Does Not Change The Holding That Non-Government Speakers Cannot Be Discriminated Against. ......................................................................................................4

    C. Plaintiffs' Misinterpretation Of *AAPC* Would Lead To Absurd Results. ...............6

    D. The Single Post-*AAPC* Text Message Does Not Change This Analysis. ...............7

    E. If The Court Finds Subject Matter Jurisdiction, It Should Still Dismiss Hogans's Claim For Lack Of Personal Jurisdiction. .............................................8

III. CONCLUSION ...................................................................................................10

I.  **INTRODUCTION**

Plaintiffs' Response confirms that this case must be dismissed for lack of subject matter jurisdiction. All of Plaintiffs' arguments to the contrary do not survive even minimal scrutiny, and are based on a misunderstanding of the law, a misstatement of Charter's arguments, or both.

For example, Plaintiffs claim on at least three occasions that Charter is arguing the TCPA as a whole has been declared unconstitutional, and then proceed to explain why that is not so. But this central premise of Plaintiffs' entire brief is plainly false, as Charter only argued that the *specific provision* of the TCPA Plaintiffs are suing under was unconstitutional, and only for a short period before the Supreme Court fixed that provision on a *prospective basis* via severance.

Plaintiffs then argue that the Court held only the debt exception was unconstitutional, not the robocall restriction that contained it. But that is also false, as Justice Kavanaugh's express language makes clear. Moreover, Plaintiffs' interpretation is a logical impossibility, as the First Amendment governs only restrictions on speech, not exceptions that permit more speech.

Plaintiffs then spend several pages explaining how the Supreme Court saved the robocall restriction by severance. But Charter does not dispute this; rather, Charter merely explained that severance is, by necessity, *prospective*, meaning the restriction was invalid from 2015 to July 6, 2020, and, thus, cannot be enforced against Charter, under settled constitutional law. Plaintiffs cite no authority to the contrary, nor do they attempt to distinguish Charter's binding authority.

And while Plaintiffs' misinterpretation of *AAPC* would lead to absurd results, Charter's correct interpretation does not. Despite Plaintiffs' distortions, Charter never argued that the entire TCPA is unconstitutional, and there are many other provisions of the TCPA (and similar statutes) that provide relief from unwanted phone calls, none of which the Court ruled unconstitutional.

This action, however, is premised on purported violations of 47 U.S.C. § 227(b)(1)(A)(iii) that occurred before July 6, 2020, the date of the *AAPC* decision. Because that provision was unconstitutional at the time of the calls at issue, Plaintiffs' claims must be dismissed. If the Court somehow holds otherwise, it should still dismiss Hogans's claim because the doctrine of pendant personal jurisdiction is not viable in the Fifth Circuit, and even if it were, it would not apply here.

1

## II. ARGUMENT

### A. *AAPC* Deemed One Statutory Section, Not The Entire TCPA, Unconstitutional From 2015 To July 6, 2020, And Plaintiffs Cite No Authority To Rebut Charter's Point That the Section Cannot Be Enforced During That Period.

From the outset, Plaintiffs misinterpret *AAPC* and mischaracterize Charter's argument, but they have no response to Charter's actual arguments or authority that compels dismissal. *First*, Plaintiffs state several times (at 1, 3, and 9) that Charter is arguing the entire TCPA was unconstitutional from 2015 to the date of the *AAPC* decision. That is wrong. As even a cursory review of Charter's motion shows, Charter explains that only the specific speech restriction Plaintiffs sue under, 47 U.S.C. § 227(b)(1)(A)(iii) (referred to by the Supreme Court and Charter as the "automated-call ban" or "robocall restriction"), was deemed unconstitutional. Plaintiffs cannot argue that the Supreme Court did not so hold because the Court stated this point explicitly:

> The initial First Amendment question is whether the ***robocall restriction***, with the government-debt exception, is content-based. The answer is yes. . . . [And] [t]he Government concedes that it cannot satisfy strict scrutiny to justify the government-debt exception. We agree.

*AAPC*, 140 S. Ct. at 2346 (emphasis added); 2347 ("In short, the ***robocall restriction*** with the government-debt exception is content-based.") (emphasis added). Moreover, the First Amendment bars laws "abridging the freedom of speech" (the restriction), not laws permitting speech (the exception). U.S. Const. amend. I. The exception could not be unconstitutional standing alone because it does not abridge speech. Thus, the ***restriction*** was unconstitutional for the period that it contained the exception, and the premise of Plaintiffs' entire response is wrong, several times over. Even the lower court's opinion in *AAPC*, which Plaintiffs mistakenly cite (at 2) in support of their argument, further supports this conclusion: "an unconstitutional content-based **restriction** on speech . . . violates the Free Speech Clause" (not a speech-permitting exception). *AAPC v. FCC*, 923 F.3d 159, 170 (4th Cir. 2019) (emphasis added).

*Second*, Plaintiffs argue (*e.g.*, at 1 and 11–14) that the Supreme Court's preserving the TCPA by severing the government exception *prospectively* somehow has bearing on whether the speech restriction was enforceable during the time it was unconstitutional. It does not. Thus,

2

Plaintiffs' extended quotations from the portion of the *AAPC* discussing severability (at 11–14) are irrelevant; indeed, Charter is not arguing that severance did not occur or that the statute is not enforceable *prospectively*. The Court's extended analysis discusses only how the statute should be *fixed*, not whether it was enforceable during the period of time it was *broken* (i.e., during the time it unconstitutionally favored certain speakers). 140 S. Ct. at 2355 ("the First Amendment does not tell us which way **to cure** the unequal treatment in this case") (emphasis added).[1]

As Plaintiffs acknowledge (at 9), the questions before the Court were whether the speech restriction violates the First Amendment and, if so, whether severance was a proper remedy. Accordingly, Plaintiffs concede that whether an unconstitutional provision of the statute could be enforced to penalize illegally disfavored speakers during the time it was unconstitutional was not presented, briefed, or argued, and thus the Court did not rule on it. Nor do Plaintiffs dispute that the Supreme Court is "a court of review, not of first view," and it does not "decide questions not raised or litigated in the lower courts," particularly ones of great constitutional importance. *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017).

*Third*, Plaintiffs cite (at 3 and 14) various cases that have been decided under the TCPA since *AAPC*, arguing that "*zero* courts endorse Defendant's reading of *AAPC*." This spurious statement begs the question, which Plaintiffs do not answer: have any other courts addressed the argument raised here by Charter? The answer is an unequivocal no. Plaintiffs have not cited a *single* case where the court was presented with the question presented here: whether a defendant can be penalized for violating a speech restriction during the time it was unconstitutional.[2] In fact, some of the cases Plaintiffs cite do not even *mention AAPC*.

---

[1] Plaintiffs assert (at footnote 10) that Charter takes the position of Justice Gorsuch's dissent. This is also untrue. Gorsuch disagreed with the remedy of severing the debt exception. *Id.* at 2366. By contrast, Charter does not challenge severance but argues the necessary consequence of ruling that the speech restriction was unconstitutional from 2015 to July 6, 2020 is that the restriction cannot be enforced during that time.

[2] Plaintiffs also cite (at 17) to a blog post from a debt collection industry group. Like the cases cited by Plaintiffs, this is irrelevant because it does not discuss the constitutional question presented. And even if it did, it is unclear why Plaintiffs think the Court should consider an industry blog as authoritative on constitutional law.

3

Accordingly, the result here is dictated by authority cited by Charter, including the well-settled principle that a federal court has no jurisdiction to enforce an unconstitutional law, and particularly not to impose liability in a discriminatory manner under the First Amendment. *See, e.g.*, *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (noting, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted"); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law void because state deprived of authority to impose it); *Baucum v. United States*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]"). The *AAPC* plurality could not possibly have overruled these majority statements, and Plaintiffs do not argue as much. In fact, they do not distinguish or even address these controlling authorities, and that is dispositive. *See D&M Specialties, Inc. v. Apache Creek Properties, L.C.*, No. SA-12-CA-588, 2014 WL 12493290, at *3 (W.D. Tex. Aug. 21, 2014) ("Where a party fails to respond to arguments in the opposing party's motion for summary judgment, the points are conceded.").

      **B.**    **The Three-Justice Dicta In Footnote 12 Of *AAPC* Does Not Change The Holding That Non-Government Speakers Cannot Be Discriminated Against.**

Instead of addressing any of this authority or First Amendment principles precluding enforcement of the restriction here, Plaintiffs argue only (at 15) that the last sentence of footnote 12 controls. But that is also wrong. In footnote 12, the plurality states: "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355, n.12. As Charter explained (at 9–11), this footnote can only possibly refer to past *judgments*, meaning the plurality did not intend to undo liability against parties that has already been adjudicated. *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710–11 (1974). That is also the only way to read the footnote consistent with the *same three Justice's* opinion in *Seila Law LLC v. CFPB*, other Supreme Court precedent,

First Amendment principles, and logic. *See* 140 S. Ct. 2183, 2208–09 (2020). And even if Charter were incorrect, the footnote is still non-binding dicta of a plurality. In fact, even if it were *majority* dicta, it still would be non-binding. *Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (dicta does not "control the judgment in a subsequent suit when the very point is presented for decision").

Again, Plaintiffs do not respond to *any* of these points, except to state that Charter's interpretation is "self-serving" and the footnote does not expressly state it is not binding. Thus, Plaintiffs concede Charter's explanation is correct: The speech restriction is unenforceable pre-severance, under established law that the plurality did not intend to and could not have overturned in the last sentence of a footnote in a case where the question was not even before it.[3] *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (noting in majority opinion that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"); *United States v. Stroke*, No. 1:14-CR-45S, 2017 WL 2643666, at *2 (W.D.N.Y. June 20, 2017) ("probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident"); *see also Seila Law*, 140 S. Ct. at 2208-09;[4] *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767 n.2 (Mem) (D.C. Cir. 2020) ("judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively") (O'Malley, J. concurring); Section II.A, *supra*, (collecting cases for proposition that court has no jurisdiction over a claim based on an unconstitutional law).

---

[3] Plaintiffs state (at n.9) that a majority of justices did not conclude that the speech restriction is unconstitutional. This too is false: "Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *AAPC*, 140 S.C. at 2343. This favoritism is the result of "the robocall restriction, with the government-debt exception[.]" *Id.*, at 2346. There is nothing in any part of the opinion to suggest that a majority of justices would disagree with the axiomatic conclusion that an unconstitutional law is not enforceable during the time it was unconstitutional.

[4] Plaintiffs argue (at 16) that the Supreme Court could not have intended *Seila Law* to dictate that "the government-backed debt exception would render ineffective the TCPA's broad prohibition on robocalling …." Plaintiffs misunderstand Charter's argument. Charter cited *Seila Law* for the proposition that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance. Plaintiffs cite no authority to the contrary and thus concede this point.

### C. Plaintiffs' Misinterpretation Of *AAPC* Would Lead To Absurd Results.

In a final attempt to distract from the constitutionally-required result, Plaintiffs imply that it would be impractical. But the opposite is true. To be clear, consumers are still permitted to seek relief under the numerous other provisions of the TCPA, all of which were unaffected by *AAPC*, as well as numerous other laws, such as the Louisiana corollary of the TCPA. *See, e.g.*, 47 C.F.R. § 64.1200(c) (prohibiting certain calls to subscribers on the Do Not Call Registry); La. Stat. § 45:844.11, *et. seq.* (Louisiana Telephone Solicitation Relief Act of 2001); 15 U.S.C. § 1692 *et. seq.* (Fair Debt Collections Practices Act). Likewise, consumers may pursue a claim under 47 U.S.C. § 227(b)(1)(A)(iii) after July 6, 2020, when Charter *agrees* it was fixed prospectively by severance. Thus, the constitutionally-required result here is neither impractical nor unworkable.

Plaintiffs' only argument otherwise (at 5–6) goes as follows: (a) Charter argues the whole TCPA was unenforceable because of the robocall restriction's infirmities; and (b) by analogy, that would mean a similar infirmity in the home appliances section of the LUTPA would invalidate its elder abuse restrictions. As noted above, however, Charter *never* argued that the entire TCPA was invalidated, and it *never* argued that an infirmity in one distinct statutory section (about, *e.g.*, home appliances) could possibly result in the unenforceability of another section about a different matter (*e.g.*, elder abuse). Charter merely explains the obvious: (a) that *AAPC* held that the "***robocall restriction*** with the government-debt exception" was unconstitutional, 140 S. Ct. at 2347 (emphasis added); and (b) that the ***robocall restriction*** must be treated as unconstitutional during the time it was, *i.e.*, before severance. Thus, Plaintiffs' LUTPA analogy falls flat.

On the other hand, Plaintiffs' misinterpretation of *AAPC would* lead to absurd results. As explained in Charter's motion (to which Plaintiffs offer no response), strict scrutiny applies equally to viewpoint discrimination, meaning the result in *AAPC* would have been the same if the exception had favored a particular party, race, or ethnic group. *See* 140 S. Ct. at 2347 (explaining the challenge was "subject to strict scrutiny."). This is critical to understanding why Charter cannot be penalized under the robocall restriction during a time favored speakers were excused.

The following are examples of the absurd and dangerous results from a holding otherwise:

6

- Congress could pass another exception to the TCPA permitting petroleum companies to make calls that were prohibited for everyone else (including disfavored green energy companies). After the Supreme Court severed this exception, the non-favored energy companies could still be penalized for violating the pre-severance statute while the favored oil and gas companies were excused up until the point of the severance.

- Congress could pass a carve-out for the Biden campaign that was later held to be unconstitutional. After the Supreme Court severed the exception, the disfavored speakers (including opposing campaigns) could then be punished for making calls during the period of time for which the Biden campaign was given a free pass.

- Plaintiffs could sue Charter and a government debt collector, claiming they both annoyed and harassed her with collections calls, using the same dialing platform. The claim against the debt collector would fail but the claim against Charter would be permitted.

These results, which would be *required* if Plaintiffs' argument is accepted—and which Plaintiffs tellingly fail to even address—are not tenable, and they are not the law. Indeed, "[i]t is a fundamental precept of the First Amendment that the government cannot favor the rights of one private speaker over those of another." *Bible Believers v. Wayne County Mich.*, 805 F.3d 228, 247 (6th Cir. 2015). The First Amendment thus does not permit enforcement of 47 U.S.C. § 227(b)(1)(A)(iii) here. *See Ex parte Siebold*, 100 U.S. at 377; *Grayned*, 408 U.S. at 107 n.2; *Sessions*, 137 S. Ct. at 1699 n.24; *see also Montgomery*, 136 S. Ct. at 724; *Baucum*, 80 F.3d at 540–41.

### D. The Single Post-*AAPC* Text Message Does Not Change This Analysis.

Nor does the single post-*AAPC* message change this analysis. As Charter explained, that message from *Spectrum Mobile* is insufficient to state a claim as to Charter. And even if that were not so, it is insufficient to confer Article III standing because it is not traceable to Charter, which did not send the message. *See In re Enron Corp.*, 238 F. Supp. 3d 799, 839 (S.D. Tex. 2017) ("conclusory statement that three entities are one is not sufficient without specific facts supporting such an allegation"). In fact, a single message is insufficient to confer standing, even if Plaintiffs named the proper defendant. *Salcedo v. Hanna*, 936 F.3d 1162, 1172–73 (11th Cir. 2019).

Plaintiffs concede (at 18) Charter is not the proper defendant with respect to the message by agreeing that "Spectrum Mobile should be added as an additional defendant," yet they make no attempt to do so. Plaintiffs also contend (at 18–19) that Spectrum Mobile's conduct can be imputed to Charter based on agency principles. But Plaintiffs ignore that the FAC is devoid of agency

allegations. *See Bilek v. Fed. Ins. Co.*, No. 19 C 8389, 2020 WL 3960445, at *4–6 (N.D. Ill. July 13, 2020) (dismissing TCPA claim where plaintiff "failed to allege an agency relationship between [defendant] and the [callers]"). Further, even if Plaintiffs were correct, the Court would still lack subject matter jurisdiction over Hogans's claim, another point Plaintiffs concede.

    **E.    If The Court Finds Subject Matter Jurisdiction, It Should Still Dismiss Hogans's Claim For Lack Of Personal Jurisdiction.**

Finally, Hogans concedes that she cannot state a *prima facie* case of general or specific personal jurisdiction. Instead, she resorts to efficiency arguments that are both inapt and incorrect. She also cites the pendent jurisdiction doctrine, which is not recognized in the Fifth Circuit and would not apply here even if it were.

Contrary to Hogans's lead argument, personal jurisdiction is not a matter of "practicality." *See Conrad Shipyard, L.L.C. v. Franco Marine 1 LLC*, 431 F. Supp. 3d 839, 855–56 & n.9 (E.D. La. 2020) (recognizing Fifth Circuit requires independent "minimum contacts analysis" of each party's claim while "ignor[ing] practical consequences" of original plaintiff and third-party plaintiffs' claims being split). Instead, it is constitutional: Hogans must (but cannot) establish that exercise of jurisdiction *in Louisiana on her claims* will not offend due process. *Bristol-Myers Squibb Co. v. Sup. Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 & n.6 (5th Cir. 2006).

Pendent jurisdiction creates no exception to due process because, contrary to Plaintiffs' argument, the Fifth Circuit has considered and rejected this doctrine:

> Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause … *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1351, at 299 n.30 (2004) ("***There is no such thing as supplemental specific personal jurisdiction***; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.").

*Seiferth*, 472 F.3d at 275 & n.6 (emphasis added, footnote number omitted, and paragraphing altered to include footnote with main text); *accord Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Seiferth* with approval).

Moreover, consistent with *Seiferth*, *Bristol–Myers* "squarely rejected" the pendent personal jurisdiction doctrine by holding that "specific personal jurisdiction does not lie over a nonresident plaintiff's claim against a defendant not subject to general personal jurisdiction solely because the nonresident plaintiff's claim is similar, or even identical, to a resident plaintiff's claim in the same suit." *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 871, 875 (N.D. Ill. 2017). Based on this binding authority, Hogans's theory fails. *See In re Testosterone Replacement Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1048 (N.D. Ill. 2016) (citing *Seiferth* in holding that there is no "pendent or supplemental theory of personal jurisdiction") (internal quotations omitted).

Even assuming *arguendo* that pendent jurisdiction exists, it is not applicable here because this case involves discrete allegations of two separate plaintiffs, rather than one plaintiff attempting to assert several claims that stem from a common nucleus of fact. *See In re: Bard IVC*, No. 15-2641, 2016 WL 6393596, at *4 (D. Ariz. Oct. 28, 2016) ("Even if [the pendent jurisdiction] doctrine is viable, it applies to claims asserted by a single plaintiff."). Tellingly, the FAC separately states factual allegations unique to Creasy (¶¶ 6, 10–42) and Hogans (¶¶ 7, 43–61) that concern calls from different numbers, to different numbers, with different greetings, for different intended recipients, for different purposes, and with distinct responses. In contrast, the only allegations Plaintiffs term "Common" (¶¶ 62–82) are conclusory allegations parroting the TCPA. Thus, pendent jurisdiction is inapplicable even if it were a viable theory.[5]

The Court should also deny Hogans's alternative request that the Court order a discretionary transfer. Courts (including within this district) are split as to whether Section 1631

---

[5] The authority cited by Plaintiffs does not change this result, as it is contrary to *Bristol-Meyers* and *Seiferth*, originates outside the Fifth Circuit, involves multiple claims of a single plaintiff, and is otherwise inapposite. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783–84 (N.D. Tex. 2008) (ignoring *Seiferth* in exercising jurisdiction over sole plaintiff's theft and unjust enrichment claims); *Conwill v. Greenberg Traurig, L.L.P.*, No. CIV.A. 09-4365, 2009 WL 5178310, at *9 (E.D. La. Dec. 22, 2009) (following *Rolls-Royce* instead of *Seiferth*).

even applies to personal jurisdiction, but "the better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction . . . ." 15 C. Wright, A. Miller, & E. Cooper, *Fed. Practice & Procedure* § 3842 (4th ed. 2020); *see also Bentz v. Recile*, 778 F.2d 1026, 1028 n.5 (5th Cir. 1985) (declining to decide whether § 1631 permits transfer based on lack of personal jurisdiction).

And even if that were not true, the Court should decline to exercise its discretion to transfer this case, at least in its current form, for at least two reasons. *First*, the first-to-file rule and Rule 23 would prohibit Hogans and her counsel from bringing a putative class action in another jurisdiction that overlaps with Creasy's.[6] *See Gonzalez v. Unitedhealth Group, Inc.*, No. 6:19-cv-00700, 2020 WL 2992174, at *1 (W.D. Tex. June 3, 2020). *Second*, as Plaintiffs acknowledge (at 23), transfer is only appropriate in the interests of justice. Here, the interests of justice do not support transferring the case (as opposed to dismissing it) given the claim has a four year statute of limitations and Hogans is free to bring her claim on an individual (non-class) basis.

## III. CONCLUSION

If Congress passed a Biden exception and the Supreme Court severed it years later, no one would argue that the Trump campaign could be penalized under the robocall restriction during the time his opponent was exempt. Plaintiffs have no answer to this. For the same reasons, Charter cannot be penalized for allegedly placing calls in violation of an unconstitutional speech restriction, when government-favored speakers were illegally exempt. That is particularly true in this case, given it involves collections messages and the illegally exempted parties were collectors of government debt.[7] The Court should enforce the First Amendment and dismiss this case.

Dated: September 15, 2020    Respectfully submitted,

**KABAT CHAPMAN & OZMER LLP**
/s/ *Ryan D. Watstein*

---

[6] Plaintiffs contend (at 23) that, if the Court lacks personal jurisdiction over Hogans, then it should transfer the case to the E.D.N.C. and Charter should waive its right regarding the "first-to-file" rule. This makes no sense. *Plaintiffs'* actions precipitated this motion when they added a plaintiff with no connection to Lousiana. Hogans is free to either file her own individual claim or to simply wait and attempt to be part of the class in Creasy's case.

[7] *See, e.g.*, Dkt. 24, p. 50 (evidencing Plaintiffs' receipt of debt collection text message).

Ryan D. Watstein
*pro hac vice*
rwatstein@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300


Paul A. Grammatico
*pro hac vice*
pgrammatico@kcozlaw.com
333 S. Grand Ave., Suite 2225
Los Angeles, California 90071
(213) 493-3988


David E. Redmann, Jr. (No. 23,267)
**Bradley Murchison Kelly & Shea LLC**
1100 Poydras St., suite 2700
New Orleans, Louisiana 70163
(504) 596-6300
dredmann@bradleyfirm.com

*Counsel for Defendant Charter
Communications, Inc.*